IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 0 4 2002

Michael N. Milby
Clerk of Court

JOSE IGNACIO MONTERRUBIO, §
   Petitioner, §
      §
v.        §  Cause No. 02-CV-204
      §
JANIE COCKRELL, Director, §  ** CAPITAL LITIGANT **
Texas Department Of Criminal §
Justice, Institutional Division, §
   Respondent. §

## RESPONDENT COCKRELL'S ORIGINAL ANSWER AND
## MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

Petitioner Jose Ignacio Monterrubio ("Monterrubio")[1] was properly convicted and sentenced to die in Texas state court for the senseless murder of Carla Villarreal. He now challenges his conviction and sentence in this Court pursuant to 28 U.S.C. §§ 2241 & 2254. However, Monterrubio's petition should be denied because he fails to demonstrate that he is entitled to federal habeas relief.

### MONTERRUBIO'S ALLEGATIONS

The Director understands Monterrubio to raise the following grounds for federal habeas relief:

1. Appellate counsel rendered ineffective assistance in violation of Monterrubio's Sixth Amendment right to counsel;

  a. by failing to raise as error on appeal the fact that the introduction of Sixto Monterubbio's confession into evidence during Monterrubio's trial violated his Sixth Amendment right to confront and cross-examine witnesses against him;

---

[1] For purposes of clarity, Respondent Janie Cockrell will be referred to as "the Director."

      b.     by failing to raise as error on appeal the fact that the trial court erred in admitting the inadmissible hearsay testimony of Delaila Zarate;

2.     Trial counsel rendered ineffective assistance of counsel in violation of Monterrubio's Sixth Amendment right to counsel;

      a.     by failing to request a special venire under Texas Code of Criminal Procedure article 34.01;

      b.     by failing to challenge juror Laura Becerra for cause;

      c.     by failing to conduct adequate voir dire of prospective jurors;

      d.     by failing to object to hearsay testimony offered by witnesses Yvette Urie, Gilbert Acala, Delaila Zarate, Julie Ramirez, and Jorge Homero Hinojosa; and

      e.     by failing to offer adequate evidence of mitigation during the punishment phase;

3.     Monterrubio's confession was obtained in violation of his federal constitutional right against self incrimination under the Fifth Amendment;

4.     The evidence offered during the punishment phase was insufficient to support the jury's affirmative finding of future dangerousness and, thus, violated Monterrubio's Fourteenth Amendment right to due process.

However, all four requests for relief must fail. Initially, the Director denies all allegations of fact made by Monterrubio, except those supported by the record and those specifically admitted herein.[2] Importantly, Monterrubio is procedurally barred from obtaining federal habeas relief on his first three claims. Regardless, these claims, as well as his fourth claim, are without merit. Thus, the federal habeas relief requested in the instant petition should be denied.

---

    [2]    Copies of Monterrubio's state direct appeal and habeas records were previously filed with this court.

## STATEMENT OF THE CASE

Monterrubio was properly convicted and sentenced to death for murdering Carla Villarreal while in the course of committing and attempting to commit aggravated sexual assault. Tr 13.[3] On September 11, 1996, the Texas Court of Criminal Appeals affirmed Monterrubio's conviction and sentence in an unpublished opinion. *Monterrubio v. State*, No. 72, 028 (Tex. Crim. App. 1996). He did not petition the United States Supreme Court for a writ of certiorari.

Monterrubio filed an application for writ of habeas corpus in the trial court on April 27, 1997. SHTr 001. The trial court entered findings of fact and conclusions of law recommending that relief be denied. SuppSHTr 41-43. The Court of Criminal Appeals ultimately adopted those findings and denied relief on March 8, 2000. *Ex parte Monterrubio*, No. 44,170-1 (Tex. Crim. App. 2000).

On June 1, 2001, Monterrubio filed a skeletal petition, and then later an amended petition on July 2, 2001, seeking federal habeas relief from his state conviction and sentence. *See Monterrubio v. Cockrell*, No. 01-CV-112 (S. D. Tex. 2001). On May 30, 2002, this Court ordered that Monterrubio's petition be dismissed without prejudice to afford Monterrubio the opportunity to present his unexhausted claims to the state court. Shortly thereafter, on June 14, 2002, Monterrubio filed a successive writ application in the trial court. This writ was ultimately dismissed by the Court of Criminal Appeals, on September

---

[3]   "Tr" refers to the transcript of pleadings and documents filed with the court during the trial, preceded by volume number and followed by page numbers. "SR" refers to the state record of transcribed trial proceedings, preceded by volume number and followed by page numbers. "SHTr" refers to the state habeas transcript - the transcript of pleading and documents filed with the court during the state habeas proceedings - followed by page numbers. "FF" refers to the numbered findings of fact issued by the state habeas court. "CL" refers to the numbered conclusions of law issued by the state habeas court.

11, 2002, as an abuse of writ. *Ex Parte Monterrubio*, No. 44,170-02 (Tex. Crim. App. 2002). The instant federal petition followed, asserting the same claims raised in his original federal habeas petition.

## STATEMENT OF FACTS

### I.    Facts of the Crime

On September 5, 1993, Carla Villarreal's mother and stepfather discovered that she was missing. 16 SR 160. Carla had returned home the prior evening around 10:00p.m. after attending a neighborhood party with her friend Yvette Urie, but was not in her room the following morning. 16 SR 52, 158. The door to Carla's bedroom was locked from the inside and it did not appear that she had slept in her bed. 16 SR 160. Alarmed, Carla's parents telephoned and visited several of Carla's friends in attempt to discover her whereabouts. 16 SR 53, 161. When their efforts proved futile, they reported Carla's disappearance to the Brownsville police. 16 SR 162.

During their initial investigation, police learned that Carla had told several people that she was planning on sneaking out of the house later that evening to meet up with Sixto Monterrubio ("Sixto"). 16 SR 54, 186. When questioned on September 9, Sixto told police that he was in Matamaros attending a wedding reception on the night that Carla disappeared. 16 SR 183. He further stated that he had not seen Carla that night, but had only spoken with her over the telephone. 16 SR 183. After further investigation, the police decided to bring Sixto back down to the station on September 30 for more questioning regarding the nature of his relationship with Carla. 16 SR 189. Sixto admitted that Carla had previously snuck out of her house to meet up with him and go to the beach. 16 SR 189.

The next day, the police received a telephone call from Sixto, telling them that Carla had left a letter on the windshield of his mother's car. 16 SR 192-92. After retrieving the

4

letter, the police went to Carla's parents in order to obtain a known writing sample of Carla's handwriting.  16 SR 193.  The police found that the two writing samples were not even remotely similar.  16 SR 194.  A few days later, on October 4, Carla's stepfather called police to tell them that they had also received a letter purportedly written by Carla.  16 SR 195, 19 SR 587.  It was ultimately determined that the letters had been written by Sixto.

Meanwhile, the police had also determined that Sixto's alibi was false.  16 SR 201. When confronted by police with this information, Sixto asserted that he had actually been with his cousin, Monterrubio, on the night in question.  16 SR 204.  Police then brought Monterrubio to the station to confirm the veracity of Sixto's latest alibi.  16 SR 205.  After giving an initial statement to police conflicting with Sixto's account of that evening, Monterrubio confessed that he and Sixto had sexually assaulted and murdered Carla Villarreal.  16 SR 205-206, 17 SR 452-53.

The Court of Criminal Appeals summarized the facts surrounding Carla Villarreal's murder as follows:

> According to the record, [Carla], a minor, was a "friend" of [Monterrubio's] cousin, Sixto, and was accustomed to sneaking out of her parent's home in their company.  According to [Monterrubio's] confession, he and Sixto had some degree premeditated and planned the crime.  As the three rode in Sixto's car in the late hours of the night of the offense, Sixto and [Monterrubio] attacked the victim, beating her about the head with a crow-bar.  [Monterrubio] confessed [that] he struck the victim with the crow-bar and threatened to hit her again if she did not submit to him and Sixto.  Under these threats she submitted.  She was stripped and her hands tied with a leather shoelace from [Monterrubio's] boot.  [Monterrubio] and Sixto then proceeded to anally, vaginally, and orally rape her throughout the night, driving from one location to another so as to avoid being detected.  [Monterrubio] recounted in his confession that at one point the victim managed to escape from Sixto's car, was quickly apprehended, beaten into submission and dragged back to the car begging for her life.  [Monterrubio] also recounted that as he raped her, the victim begged for her life, promising that since she was their friend, she would not tell anyone about the incident.  [Monterrubio] described how he turned up

5

the car radio so the victim's pleas for help could not be heard.

As morning approached, Sixto and [Monterrubio] drove the victim, as she begged for her life, to a secluded place. [Monterrubio] asserts that he attempted to choke her with a towel, but was unable to kill her. They drove to another location, where Sixto unsuccessfully attempted to choke the victim to death. [Monterrubio] then stabbed the victim's neck with a pocket knife. As she began to choke on her own blood, [Monterrubio] and Sixto took turns, trying unsuccessfully to break her neck. Unable to break her neck, they began to beat her. [Monterrubio] beat her head with a stick, breaking her jaw. [Monterrubio] then retrieved a can of tire-foam from the car for Sixto to spray the foam into the victim's nose and mouth. Still the victim clung to life. Exasperated, Sixto and [Monterrubio] drove the victim to yet another location. There [Monterrubio] took his shirt off, wrapped it around the victim's face and smothered her until she died, ten to twenty minutes later. [Monterrubio] and Sixto moved the victim's body several times before they led police to the decomposed remains.

*Monterrubio v. State*, slip op. at 4-5.

## II.    Evidence Relating to Punishment

The State's only evidence on punishment was the victim impact testimony of Carla Villarreal's mother and sister. 20 SR 3-10. They both spoke briefly regarding the effect Carla's death had on their family. 20 SR 3-10.

The defense introduced testimony from several witnesses, including Monterrubio's mother and grandmother, regarding his general good nature and benevolent character. Josefina Lopez, Monterrubio's grandmother, testified that he was a good and obedient child. She and Rosa Monterrubio, Monterrubio's mother, both indicated that after committing the murders, he stopped eating and going to school and appeared very sad. 20 SR 12, 17. Gloria de la Garza and her daughter, acquaintances of Monterrubios, both testified that he was disciplined and respectful. 20 SR 23-24, 27.

6

## ANSWER AND MOTION FOR SUMMARY JUDGMENT

This Court's authority to grant federal habeas relief is constrained by the deferential scheme set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Pursuant to 28 U.S.C. § 2254(d), this Court must defer to a state court's adjudication of Monterrubio's claims on the merits unless the state court's decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." With regard to questions of law, a state court's decision is "contrary to" clearly established federal law if it reaches a legal conclusion that directly conflicts with a prior Supreme Court decision or if it reaches a conclusion different than one reached by the Supreme Court in deciding a case with materially indistinguishable facts. *Tennard v. Cockrell*, 284 F.3d 591 (5th Cir. 2002)(citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)), *cert. denied*, 123 S. Ct. 70 (2002). Alternatively, when addressing mixed questions of law and fact, a state court's decision constitutes an "unreasonable application" of clearly established federal law if it correctly identifies the governing precedent, but unreasonably applies it to the facts of the case. *Penry II*, 532 U.S. at 792; *Williams*, 529 U.S. at 407-409.

Importantly, an unreasonable application of federal law differs from a merely incorrect application of federal law. *Penry II*, 532 U.S. at 792; *Williams*, 529 U.S. at 410. The Fifth Circuit has reasoned that "because section 2254(d) places a new constraint on a federal habeas court and demands greater deference to state courts, we have no authority to grant habeas corpus relief simply because we concluded, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect." *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002)(en banc) (internal citations and quotations

omitted), *petition for cert. filed*, (June 13, 2002)(No. 01-10886). Thus, habeas relief is inappropriate when a state court, at minimum, reaches a "satisfactory conclusion." *Williams*, 529 U.S. at 410-411.

Furthermore, the inquiry into reasonableness should be objective rather than subjective. *Williams*, 529 U.S. at 409-11; *Tucker v. Johnson*, 242 F.3d 617, 620 (5ᵗʰ Cir. 2001) *cert. denied*, 533 U.S. 972 (2001). Habeas relief is not warranted simply because a court concludes, in its independent judgment, that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id*. Rather, the court should issue a writ only where the state court's decision is both incorrect *and* objectively unreasonable. *Penry II*, 532 U.S. at 792; *Williams*, 529 U.S. at 411.

Finally, the state court's findings of fact are presumed to be correct, and Monterrubio bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In addition, where a habeas petitioner has failed to fully develop the factual basis of his claims in state court, he is precluded from further factual development in federal court unless he can meet the narrow exception contained within section 2254(e)(2).

**I.    Monterrubio is procedurally barred from obtaining federal habeas relief on his claim that appellate counsel was unconstitutionally ineffective. Alternatively, this allegation lacks merit.**

In his first ground for federal habeas relief, Monterrubio maintains counsel's ineffective representation on direct appeal deprived him of his right to counsel in violation of the Sixth Amendment. Specifically, he asserts that counsel was ineffective for failing to raise as error on direct appeal 1) that the admission of Sixto Monterrubio's confession into evidence deprived him of his Sixth Amendment right to confront and cross-examine witnesses against him, and 2) that the trial court erroneously allowed the inadmissible

8

hearsay testimony of Delaila Zarate. Initially, this claim is procedurally barred in the federal forum. Alternatively, it lacks merit. The instant allegations do not, therefore, provide a valid basis upon which to grant federal habeas relief.

### A.    This claim is procedurally defaulted.

Monterrubio's allegation that counsel ineffectively represented him on direct appeal was not presented to the state court in his first state writ application. When later raised in a successive application for state habeas relief, the Court of Criminal Appeals dismissed this claim as an abuse of writ. *See Ex Parte Monterrubio,* No. 44,170-02 (finding that the ineffective assistance of appellate counsel claim asserted in Monterrubio's subsequent application for writ habeas failed to satisfy the requirements of article 11.071 § 5 of the Texas Code of Criminal Procedure).

Precedent clearly dictates a petitioner procedurally defaults on a federal habeas claim where the last state court to consider a claim "clearly and expressly" dismisses it based upon a state procedural rule that provides an adequate basis for relief, independent of the merits. *Coleman v. Thompson,* 501 U.S. 722, 731-32 (1991); *Nobles v. Johnson,* 127 F.3d 409, 422 5th Cir. 1997); *Finley,* 243 F.3d 215, 218 (2001). The "independent" and "adequate" requirements are satisfied where the court clearly indicates that its dismissal of a particular claim rests upon a state ground that bars relief, and that bar is strictly and regularly followed by the state courts. *Finley,* 243 F.3d at 218. Furthermore, the Fifth Circuit has consistently recognized that the Texas abuse of writ doctrine constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims. *Fuller v. Johnson,* 158 F.3d 903, 906 (5th Cir. 1998); *Nobles,* 127 F.3d at 423; *Emery v. Johnson,* 139 F.3d 191, 195-96 (5th Cir. 1998). Thus, the state court's dismissal of the instant claim based on Monterrubio's failure to raise this claim in his first state habeas application serves to bar

9

relief in federal court.[4]

**B.     Alternatively, counsel's performance on direct appeal did not deprive Monterrubio of his Sixth Amendment right to counsel.**

A criminal defendant is constitutionally entitled to effective assistance of counsel on direct appeal as of right. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000); *Lombard v. Lynaugh*, 868 F.2d 1475, 1479 (5th Cir. 1989). The standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984), to prove that counsel afforded unconstitutionally ineffective assistance applies to claims regarding the adequacy of representation by both trial and appellate attorneys. *United States v. Merida*, 985 F.2d 198, 205 (5th Cir. 1993); *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994). Thus, to obtain relief, Monterrubio must demonstrate that his appellate counsel's performance was deficient and that such deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687.

It is well settled that effective assistance of counsel on appeal does not mean that counsel must raise every non-frivolous ground of appeal available. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999); *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). Instead, the Supreme Court has acknowledged the importance of allowing appellate attorneys the freedom to select from available issues in order to maximize the likelihood of success on appeal. *Robbins*, 528 U.S. at 288. Only "solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63.

---

[4]     Furthermore, Monterrubio makes no attempt to demonstrate either cause for his default or prejudice arising therefrom. *See Coleman*, 501 U.S. at 750 (holding that a procedural bar may be excused where a petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law).

10

For this reason, the Supreme Court has recognized that, while it is still possible to raise an ineffective assistance claim based on counsel's failure to raise a particular issue on appeal, it is difficult to demonstrate that counsel was incompetent. *Robbins*, 528 U.S. at 288. Accordingly, in order to prove that counsel's failure to raise certain issues constitutes deficient performance, and falls "below an objective standard of reasonableness," a petitioner must convince the court that the issues ignored were sufficiently meritorious such that counsel should have asserted them on appeal. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The Supreme Court has indicated that a petitioner is able to satisfy this first prong of *Strickland* by showing that a particular non-frivolous issue neglected by counsel was "clearly stronger" than those issues actually presented. *See Robbins*, 528 U.S. at 288. That is, to prove that counsel's performance was deficient, Monterrubio must demonstrate that the ignored points of error were clearly stronger in posture than those counsel chose to raise on appeal.

Further, in addition to establishing the deficiency of counsel's performance, petitioner is required to affirmatively prove prejudice arising from the alleged error. *Strickland*, 466 U.S. at 687. Prejudice is proven where the petitioner is able to demonstrate a reasonable probability, that but for counsel's deficiencies, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Williams*, 529 U.S. at 393-94. In the appellate context, proof of prejudice requires a showing that, but for counsel's error, the appellate court would have afforded relief. *See Smith v. Robbins*, 528 U.S. at 285; *Sharp v. Puckett*, 930 F.3d 450, 453 (5th Cir. 1991). Monterrubio must, therefore, demonstrate a reasonable probability that the claims counsel failed to raise would have succeeded on direct appeal had they been asserted.

Importantly, the failure to prove either the deficiency prong or the prejudice prong

11

forecloses relief on an effective assistance claim. *Strickland*, 466 U.S. at 697; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). Monterrubio has proven neither of these two requisite elements. First, because both of the issues that he contends should have been urged on direct appeal are meritless, he has not established that appellate counsel's performance was deficient. Further, that these neglected points of error lack merit precludes Monterrubio from demonstrating that he was prejudiced by counsel's failure to present them on appeal.

> **1.      Counsel was not deficient for failing to challenge the admissibility of Sixto's confession on direct appeal.**

Monterrubio's challenge to the admissibility of Sixto's confession has no merit. It is Monterrubio's contention that the use of Sixto's confession to satisfy a substantive element of the State's burden of proof deprived him of his Sixth Amendment right to confront and cross-examine the witnesses against him. However, when faced with a similar claim in *Dewberry v. State*, the Texas Court of Criminal Appeals held that hearsay accounts of statements made by an accomplice were properly admitted as evidence against the accused. *Dewberry v. State*, 4 S.W.3d 735, 754 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Specifically, the court found that these out-of-court statements were admissible as declarations against interest. *Dewberry*, 4 S.W.3d at 748; *see also* Tex.R.Crim.Evid. 803(24).

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." U.S.Const. amend. VI; *see also Pointer v. Texas*, 380 U.S. 400(1965) (applying Sixth Amendment to States as incorporated by Fourteenth Amendment). The central concern of this constitutional provision is to ensure the reliability of the evidence offered against the accused "by subjecting it to rigorous testing in the context of an adversary proceeding before

12

the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

However, this right to confrontation is not without exceptions.    In narrow circumstances, the right to a face-to-face confrontation has been limited to permit the admissibility of certain hearsay statements where the reliability and trustworthiness of those statements is otherwise established.  *See Bourjaily v. United States*, 483 U.S. 171 (1987). Hearsay statements are sufficiently dependable and, thus, admissible against an accused when 1) "the evidence falls within a firmly rooted hearsay exception" or 2) the evidence contains "particularized guarantees of trustworthiness" making adversarial testing unnecessary. *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

Under the Texas Rules of Criminal Evidence, statements made against the declarant's penal interest are not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement."  Tex.R.Crim.Evid. 803(24).   The Court of Criminal Appeals articulated numerous factors to be considered when determining whether there is sufficient corroboration to clearly indicate the trustworthiness of a particular statement. *Dewberry*, 4 S.W.3d at 751.[5] The court in *Dewberry* ultimately determined that there were sufficient corroborating circumstances to guarantee the reliability and trustworthiness of the hearsay statements offered against the appellant. *Id.* at 751-52.

Applying *Dewberry* to the instant case, it is evident that the circumstances surrounding Sixto's confession provide sufficient corroboration to clearly indicate the trustworthiness of his statement.  First, Sixto's guilt is not inconsistent with the guilt of the defendant, Monterrubio.  In fact, their confessions are strikingly similar with no effort made

---

[5]    The Court of Criminal Appeals held that a trial court should consider the following factors: (1) whether guilt of declarant is inconsistent with guilt of defendant, (2) whether declarant was so situated that he might have committed the crime, (3) the timing of the declaration, (4) the spontaneity of the declaration, (5) the relationship between the declarant and the party to whom the statement is made, and (6) the existence of independent corroborative facts. *Id.*

to shift blame to the other. Secondly, the record indicates that Sixto was situated such that he could have committed the crime. There is testimony from several different witnesses who reported that Carla was planning to meet with Sixto on the night she disappeared. 16 SR 99, 125-26, 145. Finally, there exist facts in the record that independently corroborate Sixto's confession, including the location of the body, evidence from the medical examiner consistent with Sixto's account of their attack, location of blood stains in the car, and the notes in his handwriting that he alleged had been written by Carla. 16 SR 167, 170, 271, 281, 321. Consequently, Monterrubio cannot establish that the introduction of Sixto's confession during guilt-innocence violated his right to confrontation.

It is clear that the argument asserted by Monterrubio to support the inadmissibility of Sixto's confession has been explicitly rejected by the Texas Court of Criminal Appeals. Thus, counsel's efforts to obtain relief from the Texas Court of Criminal Appeals on such a claim would have been futile. Monterrubio has not, therefore, demonstrated that appellate counsel was ineffective for failing to raise this issue on direct appeal.

> **2.     Counsel was not deficient for failing to raise the trial court's admission of hearsay testimony as error on direct appeal.**

Monterrubio also contends that appellate counsel should have alleged on direct appeal that the trial court erred in admitting hearsay testimony offered by Delaila Zarate.[6] During her direct examination by the State, Zarate testified to the following:

Q.     Did she mention Sixto's cousin?

A.     She did at one time, at the beginning of the year.

Q.     Okay. Did she mention him by, you know, Sixto's cousin or by a

---

[6]     Monterrubio identifies Gilbert Acala as the witness who offered the hearsay testimony regarding his relationship with Carla. However, the portions of the records cited indicate that the testimony was, in fact, offered by Delaila Zarate. *See* AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS.

14

specific name?

A.    Well, both.  She – she – she said, "[Monterrubio], Sixto's cousin."

Q.    Okay.  I see.  Do you know how that came up?

A.    Well, it was at the beginning of the year, and in September when school started.

Q.    Okay.

A.    And she told me that –

[COUNSEL]: Judge, I'm going to object to that.  This is clearly hearsay.

[COURT]: I will allow it.  Overruled.

Q.    Go ahead and answer.

A.    Oh–

Q.    You can answer.

A.    She told me that if I knew – she was angry.  That –

Q.    Who was angry?

A.    Carla was angry.

Q.    Why?

A.    And she approached me and told me she was angry.  I asked her why and she told me that "Well, Jose [Monterrubio], that Jose, had tried to make the moves on her."  And I said, "Jose who?"  And she said, "Well, Jose, Sixto's cousin.  You know his cousin.  Do you know who he is?"  And I told her that I didn't know who he was.  She goes, "Well, anyways, last night, I went out with Sixto and he was with his cousin, Jose, and he tried to make the moves on me."  And told her –

[COUNSEL]: Can I have a running objection to all this testimony as being hearsay?

[COURT]: Sure, Running objection will be overruled.

Q.    Go ahead.  You can answer.

15

A.    She told me – she told me – well, she told me that he had been trying to make the moves on her. And she had told him that she didn't like him and to back off, but he wouldn't listen. So she got angry, told Sixto to take Jose home, because she was mad. But instead of Sixto taking Jose home, he took her home, took Carla home.

* * * * *

Q.    And can you tell me now, where Sixto, and Jose, and Carla were [when] this "take me home" thing happened?

A.    In the car. Well, all of this happened in the car when they went out.

Q.    But do you know where they are out?

A.    No, I don't.

Q.    Okay, so they are out somewhere?

A.    Somewhere.

Q.    Okay. When you say that Carla tells you that Jose, you know, try to make – "trying to put the moves on me"?

A.    Uh-huh.

Q.    What does that mean to you?

* * * * *

Q.    What do you understand that to mean?

A.    Well, that he – he was attracted to her, and that he tried to, I guess to – well, to me, like sweet talk her, and to get close to her, hug her, hold her hand.

Q.    Was Carla upset by that?

A.    Yes.

Q.    She –

A.    Because she told me.

Q.    – told you?

16

A.    Yes. She told me that she kept telling him, you know, "Get away. I don't like you." And that he kept on insisting.

Q.    And she asked to be taken home?

A.    She asked Sixto to take [Monterrubio] home.

Q.    Oh, okay. And did Sixto take Jose home?

A.    No, instead he took Carla home.

SHTr 112-15. Monterrubio argues that Zarate's hearsay testimony was inadmissible under the Texas rules of evidence and that this issue should have been raised on direct appeal. However, despite his assertion to the contrary, a claim based upon the admissibility of this evidence would not warrant reversal by the Texas Court of Criminal Appeals.

Under Texas law, a judgment will not be reversed for error in the admission of evidence that did not injure the appellant. *Ward v. State*, 657 S.W.2d 133, 137 (Tex. Crim. App. 1983). At the time of Monterrubio's appeal, an error was considered harmless if the court determined "beyond a reasonable doubt that error made no contribution to the conviction or punishment." *Williams v. State*, 838 S.W.2d 952, 954 (Tex.Crim.App. 1992); *see also* Tex.R.App.P. 81(b)(2) (1995). In making such a determination, the court examined the source of the error, the nature of the error, whether or to what extent the State emphasized it, and its probable collateral implications. *Id.* Further, the court considered how much weight a juror would probably place upon the error and asked whether a rational trier of fact might have reached a different conclusion if the error and its effects had not occurred. *Id.*

When the error alleged in the instant case is viewed in accordance with the applicable Texas law, as set out above, it becomes obvious that the admission of Zarate's hearsay testimony was harmless error. Given the overwhelming evidence of guilt before the jury, it

17

is not likely that Zarate's testimony regarding the fact that Carla did not like Monterrubio because he tried to "put the moves on her" had any impact on the jury's verdict at either guilt-innocence or punishment. The jury was allowed to hear portions of both Sixto and Monterrubio's confessions detailing the grisly nature of the crime. The State also presented evidence to independently corroborate their accounts of the murder. *See section VII (A)(1), supra.*

Because this allegedly neglected point of error has no merit, appellate counsel was not deficient for failing to assert it on direct appeal. Thus, the instant ineffective assistance of counsel claim has not been proven, and federal habeas relief should be denied.

### 3. Monterrubio's ineffective assistance of counsel claims also fail for lack of prejudice.

Even if appellate counsel was deficient for failing to raise the issues discussed above as points of error on direct appeal, Monterrubio cannot prove that he was prejudiced by such failure. As previously stated, a petitioner seeking to prove prejudice derived from counsel's failure to raise a particular issue on appeal must show a reasonable probability that the claim would have been sustained on appeal. Because neither of the issues that Monterrubio argues were neglected on appeal have merit, no reasonable probability exists that, had counsel asserted them on direct appeal, the results of that proceeding would have been different. Accordingly, relief is not warranted on this claim.

## II.    Monterrubio received effective assistance of trial counsel.

Monterrubio maintains in his second claim that he is entitled to federal habeas relief because he was denied effective assistance of trial counsel in violation of the Sixth Amendment. Specifically he argues that trial counsel was ineffective for failing to (1) request a special venire panel; (2) challenge venire member Laura Becerra for cause; (3) properly voir dire the jury panel on punishment issues; (4) object to inadmissible hearsay

testimony offered by several of the State's witnesses; and (5) offer adequate mitigation evidence during punishment. As an initial matter, relief on these claims should be denied because they are procedurally barred in federal court. Alternatively, these claim fail on the merits.

**A.      This claim is unexhausted and, therefore, procedurally barred in federal court.**

It is well settled that a state petitioner's application for federal habeas relief shall not be granted unless the applicant has fully exhausted the available state court remedies. 28 U.S.C. § 2254(b)(1)(1996). A petitioner must, therefore, present his claims to the highest court of the state for review, before a federal court will entertain the alleged errors. *Richardson v. Procunier*, 762 F.2d 429 (5ᵗʰ Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5ᵗʰ Cir. 1982). The purpose of this requirement is not to create a procedural hurdle for petitioner's seeking habeas relief in federal court. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971). Rather, exhaustion was designed to further the policy of comity between the federal and state governments that has been consistently adhered to by both the United States Supreme Court and the Fifth Circuit. *Keeney*, 504 U.S. at 8-10; *Dowthitt v. Johnson*, 230 F.3d 733, 745-46 (5ᵗʰ Cir. 2000).

Accordingly, exhaustion requires that all claims be "fairly presented" to the state court in order to give to State the first opportunity to pass upon and correct alleged violations of the prisoner's federal rights. *Picard*, 404 U.S. at 275; *Duncan v. Henry*, 513 U.S. 364, 365 (1995). That is, a petitioner must provide the highest state court with a fair opportunity to apply the controlling federal constitutional principles to the same factual allegations. *Duncan*, 513 U.S. at 365-66; *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Anderson v. Harless*, 459 U.S. 4, 6, *Picard*, 404 U.S. at 275; *Procunier*, 762 F.2d at 431. This prevents any

19

"unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." *See Picard*, 404 U.S. at 275.

Monterrubio's second claim, in which he maintains that he was deprived of his Sixth Amendment right to effective assistance of trial counsel, was raised in his state application for writ of habeas corpus, but only in vague, conclusory form. There he asserted that,

> [t]he applicant was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Section 10 of the Texas Constitution, in that he was denied the ineffective assistance of counsel during both the guilt and punishment phases of trial,

but offered no argument or authority to support this claim. SHTr 10. He further failed to identify specific allegations of how trial counsel was ineffective. *See* SHTr 10.

Exhaustion cannot be satisfied by the simple statement of a federal claim in state court. *Keeney*, 504 U.S. at 10. In holding that this requirement warrants more than mere notice, the Supreme Court reasoned that, "[j]ust as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the state a full and fair opportunity to address and resolve the claim on the merits." *Id.* Thus, that Monterrubio previously asserted this claim in his state writ is not sufficient to exhaust where he did not provide the court with specific allegations and argument so as to allow the court the opportunity to address the claim on the merits. Given the conclusory nature of the claim as it was asserted in his state writ, it was impossible for the Court of Criminal Appeals to reach the merits on the issue of trial counsel's effectiveness. *See* SuppSHTr 41-42. Monterrubio has not, therefore, properly exhausted this claim.

Furthermore, Because Casey would be barred under Texas's abuse of writ doctrine from raising those claims in a successive state habeas application, *See* TEX. CODE CRIM. PROC. ANN. art. 11.071 § 5(a), he is also procedurally barred from raising the claim in

federal habeas review, and this court must deny relief. *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997).

**B.    In the alternative, federal habeas relief is not warranted because Monterrubio's ineffective assistance of counsel claims are entirely without merit.**

As discussed above, Monterrubio must prove that counsel was deficient and that he was prejudiced by counsel's deficiency in order to obtained the relief sought here.   These claims fail because he has demonstrated neither of these two *Strickland* prongs.   His allegations are conclusory, lacking sufficient factual and legal support.   However, even assuming that Monterrubio's arguments were more fully developed, they lack merit.

**1.    Trial counsel was not ineffective for failing to request a special venire.**

Monterrubio first faults counsel for not requesting a special venire panel pursuant to article 34.01 of the Texas Code of Criminal Procedure.   Under this article, a capital defendant may move the trial court to summon a "special venire panel" that is separate and apart from the venire summoned for regular jury service. TEX. CODE CRIM. PROC. art. 34.01 (1995). The jury panel summoned for service in Monterrubio's case was the same panel that had been summoned for regular jury service the week prior. 8 SR 11. Consequently, the venire had already been subject to voir dire in several other criminal and civil cases. *Id.* Trial counsel filed a motion to strike the panel, urging that the potential pool of jurors had been diluted by the selection of jurors for service in other cases and was, thus, not representative of the whole. *Id.* The trial court denied counsel's motion to strike and request to summon a new panel. 8 SR 12.

Monterrubio contends that had counsel simply filed a motion pursuant to article 34.01, a special venire panel would have been summoned, and he would not have been

forced to select venire members for his jury that had already served in other criminal cases. However, he completely ignores the fact that under Texas law, the decision on whether to grant a motion to summon special venire is entirely within the discretion of the trial judge. *Esquivel v. State*, 595 S.W.2d 516, 519-20 (Tex.Crim.App. 1980). The trial court's ruling on counsel's motion to strike is a clear indication of how it would have received a motion to summon a special venire under article 34.01.

Thus, Monterrubio is entirely without support for his ineffective assistance of counsel claim. In order to succeed on this claim, he is required to prove both that counsel was deficient in his performance and that such deficiency prejudiced his defense. *Strickland, supra*. He can do neither. That trial counsel filed a motion to strike instead of a motion to summon a special venire pursuant to article 34.01 does not denote deficient performance. The record clearly indicates that the substance of counsel's motion to strike was similar, if not identical, to the motion that Monterrubio maintains should have been filed. There is no reason to conclude that the trial court would have granted a motion for a new jury panel simply because it was filed expressly pursuant to article 34.01. Further, trial counsel is not ineffective for failing to make futile motions and objections. *Clark v. Collins*, 19 F.3d 953, 966 (5th Cir. 1994).

For these same reasons, Monterrubio is unable to establish prejudice resulting from trial counsel's failure to file a motion to summon a special venire. Because the ultimate decision on whether to grant such a motion is subject to the discretion of the trial judge, and there are obvious indications that the trial court would have denied that motion in the instant case, Monterrubio cannot prove prejudice. Additionally, Monterrubio has failed to prove that he was deprived of a fair trial. This Court should deny relief on this claim.

### 2.    Trial counsel was not ineffective for allowing venire member Laura Becerra to serve on the jury.

Monterrubio next asserts that trial counsel rendered ineffective assistance by allowing venire member, Laura Becerra, to serve on the jury. Specifically he contends that trial counsel should have challenged Becerra for cause because she indicated that she would automatically assess the death penalty if she were to find Monterrubio guilty of the crime charged. This claim is entirely without merit.

Monterrbio's assertion that Becerra would automatically assess the death penalty if she were to find him guilty is not supported in the record. To support this assertion, he cites to a portion of the record where Becerra states, during the prosecution's voir dire, that she "probably would go with the death penalty" if Monterrubio were proven guilty. 16 SR 220. This statement in no way indicates that Becerra would automatically assess the death penalty. At worst, her statement reflects that she would likely vote in favor of the death penalty, if the issue arose. Moreover, trial counsel followed up on this statement during the defense's voir dire by clarifying that Becerra would, indeed, be open minded enough to consider both punishment options, not just death. 20 SR 225.

The proper standard for determining when a veniremen may be excused for cause because of his/her views is unequivocally set out in *Wainwright v. Witt*, 469 U.S. 412, 424 (1985). There, the Court stated that the critical inquiry is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath.'" *Id.* at 424 (quoting *Adams*, 448 U.S. 38, 45 (1980)). A venire member must, therefore, be willing not only to accept that the death penalty is, in certain circumstances, an acceptable punishment, but also to answer the statutory questions without

23

conscious distortion or bias.[7] *Mann v. Scott*, 41 F.3d 968, 981 (5th Cir. 1994) (citing *Adams*, 448 U.S. at 46, 100 S.Ct. at 2527).

There was, therefore, no basis upon which to challenge Becerra for cause, and consequently no support for Monterrubio's ineffective assistance of counsel claim. He cannot demonstrate that counsel was deficient for allowing Becerra to serve on the jury where there is no plausible reason to excuse her from service.[8] Likewise, he is also unable to establish any prejudice resulting from Becerra's service on the jury. Relief on this claim should be denied.

### 3.     Trial counsel was not ineffective in his voir dire of the venire on punishment issues.

In his third allegation, Monterrubio avers that trial counsel failed to effectively voir dire the venire on punishment issues. Specifically, he complains that counsel afforded too much attention to questioning the panel regarding whether they could consider probation for the lesser included offense of murder. He further faults counsel for failing to adequately inquire of individual venire members regarding the issues of future dangerousness and mitigation. Despite his allegations, Monterrubio is unable to demonstrate, as the *Strickland* standard requires, that counsel was deficient in his performance during voir dire, or that Monterrubio was prejudiced by that performance.

Importantly, counsel's decisions regarding the voir dire on punishment issues are

---

[7] Texas juries are required to answer certain special issues on punishment, submitted to them pursuant to Tex. Code Crim. Proc. art. 37.071 § 2.

[8]     To the extent that Monterrubio would argue that trial counsel's failure to use a peremptory challenge to strike Becerra constituted ineffective assistance, he has failed to demonstrate either deficient performance by counsel or prejudice. Counsel's decisions during voir dire are considered a matter of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). Decisions regarding trial tactics cannot be the basis of an ineffective assistance of counsel claim unless counsel's tactics are shown to be "so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1993)); *see also Strickland*, 466 U.S. at 689-90(noting that proof of deficient performance requires petitioner to overcome the strong presumption that counsel's conduct may be considered sound trial strategy).

considered a matter of trial strategy. *See Teague*, 60 F.3d at 1172. Decisions regarding trial tactics cannot be the basis of an ineffective assistance of counsel claim unless counsel's strategies are shown to be "so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* Moreover, the Fifth Circuit has explicitly declined to second-guess counsel's strategic choices on federal habeas review. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

Monterrubio offers nothing to overcome the presumption that the questions asked by counsel during voir dire were anything less than conscious, well informed choices based upon sound trial strategy. Simply identifying those questions asked and not asked regarding punishment issues, without more, is insufficient to prove, by a preponderance of the evidence, that counsel was deficient in his performance. *See Martin v. Maggio*, 711 F.2d 1273, 1279 (5th Cir. 1983)(holding that the burden is on the petitioner to prove effective assistance of counsel by a preponderance of the evidence). Moreover, conclusory allegations of ineffective assistance of counsel, without more, do not warrant habeas relief. *Kinnamon v. Scott*, 40 F.3d 731, 734-35 (5th Cir. 1994). Thus, Monterrubio has wholly failed to carry his burden of proof in regard to this claim.

He is similarly unable to prove that he was prejudiced by counsel's voir dire on the issue of punishment. To meet the prejudice prong, the petitioner must affirmatively prove, and not merely allege, prejudice. *Hill v. Lockhart*, 474 U.S. 52, 57 (1986). Here, Monterrubio neglects to even allege possible prejudice arising from the alleged inadequacy of counsel on voir dire. Accordingly, this Court should deny relief on this claim.

25

### 4. Trial counsel was not ineffective for failing to object to hearsay testimony offered by several of the State's witnesses.

Monterrubio argues that trial counsel was ineffective for not objecting to hearsay testimony offered by State witnesses Yvette Urie, Gilbert Acala, Delaila Zarate, Julie Ramirez, and Jorge Homero Hinojosa. He further urges the hearsay testimony offered by these witnesses was injurious and prejudicial to his defense. Monterrubio's discussion regarding this claim details several hearsay statements testified to by each witness. It is unclear whether he is asserting that each statement alone constitutes the basis for an ineffective assistance claim, or whether it is the effect of the statements as a whole that supports a claim of ineffectiveness.[9]

The first series of hearsay statements relates to Carla's relationship with Monterrubio. Yvette Urie testified that Carla thought Monterrubio was creepy and weird. 16 SR 58, 54. She also told the jury of an incident where Monterrubio appeared in Carla's homeroom class and kept staring at her, making her feel like he was watching her. 16 SR 87. Delaila Zarate testified that Carla told her about being angry with Monterrubio because he "tried to put the moves" on her. 16 SR 113.

Trial counsel was not ineffective in allowing the admission of the above referenced testimony. Initially, the Director would point out that counsel did, in fact, object to the introduction of Zarate's testimony regarding Monterrubio's attempts to "put the moves" on Carla. 16 SR 113. Hence, there is no basis for an ineffective assistance of counsel claim with regard to this statement. It is also important for this Court to note that while Urie was a State witness, the testimony complained of was elicited by the defense during cross-

---

[9]     While Monterrubio discussed the hearsay evidence objected to in accordance with the witness testifying, the Director responds to this claim by addressing the evidence according to the subject matter of the hearsay statement with the belief that this will facilitate the Court's analysis of this issue.

26

examination, thus indicating that counsel's failure to object to the hearsay nature of this evidence was a deliberate and conscious decision made pursuant to trial strategy, rather than negligence.

As previously discussed, a petitioner seeking relief on an ineffective assistance of counsel claim must overcome the strong presumption that the challenged conduct may be considered sound trial strategy. *Strickland, supra.* Conscious and informed decisions on trial tactics and strategies cannot be the basis of an ineffective assistance of counsel claim unless those decisions are so ill chosen as to permeate the entire trial with obvious unfairness. *Green, supra.* Monterrubio offers nothing to overcome this presumption. As such, he has failed to prove that counsel's performance in this matter was deficient.

The second group of hearsay statements pertains to Carla's relationship and interaction with Sixto. Zarate, Gilbert Acala, and Julie Ramirez each testified regarding what Carla relayed to them about the times she would sneak out of her house after curfew to meet up with Sixto. 16 SR 100, 111-112, 137. These witnesses were also allowed to tell what Carla told them about getting drugs and money for drugs from Sixto. 16 SR 103, 121-22, 149. Further, Acala and Zarate conveyed to the jury what Carla told them about her plans to meet up with Sixto on the night she disappeared, and Julie Ramirez gave hearsay accounts of Carla's opinion of Sixto, that he was short, chubby and ugly, and of their conversations regarding Sixto's relationship with other people. 16 SR 99, 123, 149-151.

Here again, there is a strong indication that counsel's failure to object to this testimony on hearsay grounds was a calculated decision based upon sound trial strategy. Although tried separately, Sixto and Monterrubio were both charged with capital murder for sexually assaulting and killing Carla Villarreal. It would appear that, to the extent possible, counsel was attempting to divert attention and blame from Monterrubio onto his accomplice,

27

in an effort to cast doubt on whether Monterrubio had the requisite culpable mental state required to convict on capital murder. Shifting the primary blame and responsibility from one actor to another is a valid and sound defense strategy. Counsel was not, therefore, ineffective for failing to object to the introduction of this evidence.

Finally, Monterrubio faults counsel for allowing Jorge Homero Hinojosa, Carla's stepfather, to give testimony regarding his daughter's character and hearsay statements from several people he encountered during the investigation of Carla's disappearance. 20 SR 154, 161-62, 166, 167. Despite the fact that much of this evidence is clearly hearsay, Monterrubio has failed to show that he was prejudiced by the admission of this evidence. The prejudice prong of an ineffective assistance of counsel claim must be affirmatively proven, not merely alleged. *See Lockhart, supra.* Monterrubio's conclusory assertions regarding the injurious nature of these hearsay statements are insufficient to prove, by a preponderance of the evidence, a reasonable probability that admission of this testimony affected the jury's verdict on guilt-innocence. Further, it is not only with regard to Hinojosa's testimony that Monterrubio has failed to prove prejudice. He similarly fails to assert how the hearsay testimony by the other four witnesses impacted the outcome of his trial. Accordingly, relief on this claim should be denied.

**5.    Trial counsel was not ineffective in his presentation of mitigating evidence during the punishment phase of Monterrubio's trial.**

In his final allegation, Monterrubio maintains that trial counsel was ineffective for failing to present mitigating evidence during the sentencing phase of his trial. Specifically, he complains that trial counsel presented no evidence to the jury that would justify a sentence less than death. He further asserts that "the record reflects a significant amount of evidence available to the defense without any investigation at all."

28

Once again, Monterrubio's claim is entirely conclusory, lacking the support necessary to prove that he is entitled to relief under the Sixth Amendment. First, he has not shown that counsel's performance in presenting mitigating evidence on punishment was deficient. Despite his assertion regarding the mitigation reflected in the record, Monterrubio fails to specifically identify what, if any, mitigating evidence counsel could have asserted. He merely suggests that counsel should have pursued the issue of whether he was under the control and domination of his cousin, Sixto, and brought forth an expert to testify regarding the likelihood of his committing an act of violence in the future.

He does not, however, provide any affidavits from possible witnesses who could have offered evidence to support either contention. Although Monterrubio claims that counsel should have produced testimony from an expert regarding whether he constituted a future danger, without an affidavit or report from an expert who examined Monterrubio for this purpose, he cannot prove the mitigating nature of any such testimony. Further, the record reveals that counsel did, in fact, attempt to elicit testimony from witnesses regarding the extent to which Monterrubio's actions were influenced by Sixto, but with little success. 20 SR 16-17, 23-24.

To support a claim of ineffective assistance of counsel due to uncalled witnesses, Monterrubio would have to prove that these witnesses were willing and able to testify, and what they might have testified to. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). The Fifth Circuit has held that such complaints are not favored on federal habeas review because allegations of how witnesses would have testified are largely speculative. *Lockhart v. McCotter*, 782 F.2d 1275, 1283 (5th Cir. 1986).

Accordingly, there is nothing demonstrating that the evidence presented by counsel on punishment was inadequate, such that his performance in this matter was deficient. The

29

mere lack of mitigating evidence is not enough, where it has not been shown that other mitigation was available. Counsel was not, therefore, ineffective in his representation of Monterrubio during the punishment phase of his trial.

For the same reasons, Monterrubio is unable to establish that he was prejudiced by counsel's presentation of mitigating evidence on punishment. He is required to affirmatively prove that, but for counsel's alleged error, a reasonable probability exists that the results of the proceeding would have been different. *Strickland, supra*. Without asserting specific mitigating evidence that was omitted by counsel, it is impossible to determine the impact additional mitigating evidence might have had on the verdict. This Court should deny relief on this claim.

**III.    Monterrubio was not deprived of his Sixth Amendment privilege against self-incrimination.**

In his third claim Monterrubio alleges that the State infringed upon he Fifth Amendment privilege against self-incrimination by interrogating him after his invoked his right to counsel. He further argues that his confession to police, wherein he admitted to the sexual assault and murder of Carla Villarreal, is tainted by this constitutional violation. Monterrubio is procedurally barred from obtaining relief on this claim in federal court. However, even assuming this claim was not procedurally barred, Monterrubio has not demonstrated that it has merit.

**A.    Monterrubio has procedurally defaulted on this claim.**

As stated in the preceding section, federal habeas claims must have been properly exhausted to warrant relief. Importantly, circuit precedent dictates that the mere similarity between a federal and state claim is insufficient to exhaust. *See Picard*, 404 U.S. at 276; *Duncan*, 513 U.S. at 366. The Fifth Circuit has state that, "it is not enough that all the facts

30

necessary to support the federal claim were before the state courts." *Nobles v. Johnson*, 127 at 420. The court must be alerted to the fact that the petitioner is asserting a claim under the United States Constitution. *Duncan*, 513 U.S. at 365-66; *Picard*, 404 U.S. at 276-77. Further, exhaustion is not achieved where petitioner "advance[s] in federal court an argument based on a legal theory district from that relied upon in the state court." *Nobles*, 127 F.3d at 422.

Monterrubio has, therefore, failed to properly exhaust the available state remedies with regard to his third claim, in which he asserts that the State infringed upon his Fifth Amendment right against self-incrimination by denying his request for an attorney. Although he presented a similar issue to the Court of Criminal Appeals on direct review, he did not do so in a manner that allowed the state court to fairly address the issue raised here in his federal petition. On direct appeal, Monterrubio urged that the trial court erroneously admitted his confession into evidence because it was obtained in violation of his request for an attorney. *Monterrubio*, slip op. No. 72,028 at 4. The Texas court held that it could not address the appellant's claim because he failed to identify the specific legal theory under which he raised his contention. *Id.* at 5. The state court was not, therefore, given a fair opportunity to address the issue now asserted in Monterrubio's federal petition, and this claim is not exhausted.

**B.     This claim also fails because it has no merit.**

The Fifth Amendment to the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S.CONST. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court recognized that the right to have counsel present during a custodial interrogation is a necessary and integral component of this privilege against self incrimination. *Id.* at 469. Thus, when the suspect

31

expresses his desire for an attorney, officers are required to cease questioning until an attorney is present. *Id.* at 474.

As a initial matter, Monterrubio's Fifth Amendment claim fails because he was not subject to a custodial interrogation. A person is in custody for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree which the law associates with formal arrest. *United States v. Paul*, 142 F.3d 836, 843 (5th Cir. 1998). Monterrubio voluntarily accompanied officers to the police station and agreed to answer questions regarding his whereabouts on the night Carla disappeared. Further, the officers testified that, prior to confessing, Monterrubio was not under arrest and was free to leave at any time. Moreover, Monterrubio was not a suspect. The officers were only interested in whether he could confirm the veracity of Sixto's alibi. Consequently, the Fifth Amendment privilege against self-incrimination and right to an attorney were not implicated in the instant case.

Monterrubio's claim is also without merit because, even assuming that he was a suspect subject to a custodial interrogation, he cannot demonstrate that he actually invoked his right to counsel. The invocation of the right to counsel must be unambiguous and unequivocal. *Davis v. United States*, 5512 U.S. 452, 458-59 (1994). A suspect must articulate his desire to have counsel present with sufficient clarity to allow a reasonable police officer in the circumstances to understand the statement to be a request for an attorney. *Id.* at 459. A request that leads a reasonable officer in light of the circumstances to understand only that the suspect *might* be invoking the right to counsel is not sufficient. *Id.* In this instant case, Monterrubio never requested that counsel be present during his interrogation. Instead, he merely asked Detective Lupio to inquire of his uncle, Sixto

32

Monterrubio, Sr., whether he would be able to get an attorney for Monterrubio if he needed one. This statement is not one that would lead a reasonable officer, in light of the circumstances, to conclude that Monterrubio was invoking his right to counsel as assigned under the Fifth Amendment to protect an accused's right against self incrimination. Importantly, his reference to an attorney, although communicated through an officer, was directed to Monterrubio's uncle. Further, he did not actually request that his uncle secure an attorney for him, but instead asked whether he would be willing to secure one if needed.

Monterrubio has wholly failed to establish that he unambiguously and unequivocally requested to police that an attorney be present during his interrogation. Moreover, such a request was unnecessary since Monterrubio was not a suspect subject to a custodial interrogation. For these reasons, his claim lacks merit and relief should be denied.

## IV. The evidence was sufficient to support an affirmative finding of future dangerousness.

Pursuant to article 37.0711 of the Texas Code of Criminal Procedure, the jury responded affirmatively to the second special issue on punishment, finding that there existed "a probability that the defendant, Jose Ignacio Monterrubio, would commit criminal acts of violence that would constitute a continuing threat to society." I-B Tr 347, *see also* Tex.Code Crim.Proc. Art. 37.0711 § 3(b)(2)(1995). Monterrubio contends that the evidence offered during the punishment phase of his trial was insufficient to support the jury's affirmative finding on this special issue.

Monterrubio previously presented this claim to the Texas Court of Criminal Appeals on direct appeal. There the state court concluded that the evidence was, indeed, sufficient to support the jury's finding. Monterrubio has failed to demonstrate that the state court's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly

33

established federal law. Accordingly, habeas relief should be denied.

In reviewing challenges to the sufficiency of the evidence, this Court examines all evidence in the light most favorable to the verdict, and asks whether any rational trier of fact could have found the issue in controversy to have been proved beyond a reasonable doubt. *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000); *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993)(citing *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). This standard is applied looking to the state's substantive law, giving great weight to the state court's determination. *Miller*, 200 F.3d. at 286; *Fay v. Donnelly*, 959 F.2d 1307, 1313-14 (5th Cir. 1992).

The issue here is whether any rational trier of fact could have found beyond a reasonable doubt that there exists a probability that Monterrubio "would commit criminal acts of violence in the future and constitute a continuing threat to society." I- B Tr 347, *see also* Tex.Code Crim.Proc. art. 37.0711 § 3(b)(2)(1995). Monterrubio argues that the meager evidence presented by the State during punishment was insufficient to establish that he would pose a future danger to society. He alludes to the fact that the State's only evidence on punishment was the victim impact testimony of Carla Villarreal's mother and sister. 20 SR 3-10.

However, the Fifth Circuit has recognized that under Texas law, the facts of the crime alone, if severe enough, can be sufficient to support an affirmative finding of future dangerousness. *Miller*, 200 F.3d at 286 (citing *Voung v. State*, 830 S.W.2d 929, 935 (Tex.Crim.App. 1992)) Monterrubio and his cousin, Sixto, brutally murdered and raped their fifteen-year-old friend, Carla Villarreal. Carla was beaten on the head with a tire iron and then forced to have vaginal, anal, and oral sex with the two cousins. 16 SR 265-70, 17 SR 452-53. When they were finished sexually assaulting her, Sixto and Monterrubio fumbled through several attempts to kill her before they finally succeeded, including attempts to

strangle her with a towel and break her neck with their hands. *Id.* They also beat her with a large stick, stabbed her with a pocketknife, and sprayed tire foam into her nose, mouth, and wounds, before smothering her with a tee-shirt. *Id.*

Adding to the heinous nature of this crime was the fact that the attack was prolonged by Carla's attempt to escape and their constant stopping to drive to a new location for fear of being discovered. *Id.* Their callousness was further evident in the way they attempted to cover up Carla's murder and deliberately deceive her family and police into thinking that she had merely run away from home. They moved her body several times, and Sixto wrote letters, purportedly from Carla, to Carla's family and himself in an effort to divert the police investigation. *Id.*

When considering this issue on direct appeal, the Court of Criminal Appeals concluded that these facts, alone, were sufficient to support the jury's affirmative finding on the future dangerousness special issue. In reaching that conclusion the court stated that, "the extreme brutality and violence of the offense betrays a most dangerous aberration of character from which a rational juror could conclude that [Monterrubio] poses a continuing threat to society." *Monterrubio,* slip op. 72, 028 at 5. The court further noted that a young man capable of inflicting such fatal humiliation and brutality upon a "friend," without any sign of remorse, is a continuing threat to society. *Id.*

Monterrubio offers nothing to refute the reasonableness of the state court's adjudication of this claim. His petition merely contains the conclusory allegation regarding the insufficiency of the evidence and the assertions that he had never previously been convicted of a criminal offense and that no psychiatric or character evidence was brought

35

forth to support a finding of future dangerousness.[10] He has, therefore, failed to demonstrate that the Court of Criminal Appeals conclusions were either contrary to, or involved an unreasonable application of, clearly established federal law, and relief should be denied.

## CONCLUSION

The Director respectfully requests that his motion for summary judgment be granted, that Monterrubio's federal petition for writ of habeas corpus be summarily denied with prejudice, and that no certificate of appealability issue with regard to any of the claims raised in the instant federal habeas petition.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

HOWARD G. BALDWIN JR.
First Assistant Attorney General

DON J. CLEMMER
Acting Deputy Attorney General
for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Capital Litigation Division

---

[10]     The Fifth Circuit has repeatedly found that evidence was sufficient to support the special issue of future dangerousness where the defendant's criminal history was minimal and/or the defendant presented positive character evidence. *See e.g. Hughes v. Johnson*, 191 F.3d 707, 720-21 (5th Cir. 1999); *Fierro v. Lynaugh*, 879, F.2d 1276, 1280 (5th Cir. 1989).

_(signature)_

TINA J. DETTMER
Assistant Attorney General
State Bar No. 24026139
Office of the Attorney General
Capital Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1600
Telecopier: (512) 320-8132

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I, TINA J. DETTMER, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing Respondent Cockrell's Answer and Motion for Summary Judgment has been served by placing same in the United States mail, postage prepaid, on this the 3rd day of December, 2002, addressed to counsel for Petitioner as follows:

Michael Charlton
1744 Norfolk
Houston, Texas 77098

Elisa Vasquez
613 19th Street
Galveston, Texas 77550

_(signature)_

TINA J. DETTMER
Assistant Attorney General

37

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE IGNACIO MONTERRUBIO<br>Petitioner, | §<br>§<br>§ | |
| v. | §<br>§ | Cause No. 02-CV-204 |
| JANIE COCKRELL, Director,<br>Texas Department Of Criminal<br>Justice, Institutional Division,<br>Respondent. | §<br>§<br>§<br>§ | ** CAPITAL LITIGANT ** |

## ORDER

### ORDER GRANTING SUMMARY JUDGMENT

On the motion of Respondent, summary judgment is hereby GRANTED and the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

It is so ORDERED.

SIGNED on this the _____ day of _____, 2002.

_____
JUDGE PRESIDING