IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAY 0 7 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| JOSE IGNACIO MONTERRUBIO,<br>Petitioner,<br><br>v.<br><br>JANIE COCKRELL,<br>Director, Texas Department of<br>Criminal Justice, Institutional Division<br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

C.A. NO. B-02-204

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Jose Ignacio Monterrubio ("Petitioner"), a prisoner sentenced to death, has filed a federal

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry No. 1). Respondent

Janie Cockrell ("Respondent") filed a motion for summary judgment. (Docket Entry No. 7). After

considering the pleadings in this case, the record, and the applicable law, particularly the application

of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the undersigned concludes that

Petitioner has not established a right to federal habeas corpus relief. For the reasons outlined below,

this Court recommends that Respondent's motion for summary judgment be **granted**, that the

petition for post-conviction relief be **denied**, that a Certificate of Appealability be **denied**, and that

this case be **dismissed**.

## BACKGROUND

On October 25, 1993, a jury found Petitioner guilty of murdering fifteen-year-old Carla

Villarreal during an aggravated sexual assault. Following a separate punishment hearing, the jury

answered Texas' special issues in a manner that required the trial court to assess Petitioner's

punishment at death. The Texas Court of Criminal Appeals affirmed Petitioner's conviction and

sentence in an unpublished opinion. *Monterrubio v. State*, No. 72,028 (Tex. Crim. App. Sept. 11, 1996). Petitioner did not seek a writ of certiorari from the United States Supreme Court.

Petitioner filed an initial state application for habeas relief on April 27, 1997. In his state habeas application, Petitioner raised twenty-one claims, basing each claim on conclusory statements without providing any legal or factual support. State Habeas Record at 1-15. Petitioner later filed two supplemental applications without developing the legal or factual basis for his habeas action. State Habeas Record at 17-24. The trial level habeas court entered findings of fact and conclusions of law on January 11, 2000, recommending that relief be denied. *See* Order on Defendant's Application for Writ of Habeas Corpus, contained in the Supplemental State Habeas Court Record at 41-43. The state habeas court recommended that the Court of Criminal Appeals deny all Petitioner's habeas claims on procedural grounds. Supplemental State Habeas Record at 42. The Court of Criminal Appeals adopted the lower court's recommendation, denying Petitioner's request for habeas relief in an unpublished order. *Ex parte Monterrubio*, No. 44,170-01 (Tex. Crim. App. March 8, 2000).

On June 1, 2001, Petitioner filed a skeletal federal petition for writ of habeas corpus that outlined his claims for relief, (*Monterrubio v. State*, B-01-CV-112, Docket Entry No. 8), and later filed an amended petition. (*Monterrubio v. State*, B-01-CV-112, Docket Entry No. 12). Petitioner's initial federal petition was dismissed to allow full exhaustion of his claims in state court. (*Monterrubio v. State*, B-01-CV-112, Docket Entry No. 30).

On June 14, 2002, Petitioner filed a "Successor Application for Writ of Habeas Corpus" in

2

state court.[1]  There, Petitioner argued that state habeas counsel's failure to raise several claims

warranted the filing of a successive state application.  On September 11, 2002, the Court of Criminal

Appeals dismissed the successive application as an abuse of the writ.  *Ex parte Monterrubio*, No.

44,170-01 (Tex. Crim. App. Sept. 11, 2002).

Petitioner promptly filed the instant federal petition.  (Docket Entry No. 1).  The current

petition raises the same issues contained raised in Petitioner's initial federal habeas action: (1)

appellate counsel rendered ineffective assistance under the Sixth Amendment by failing to raise a

claim challenging the introduction of (a) his co-perpetrator's confession and (b) one witness' hearsay

testimony; (2) trial counsel rendered ineffective assistance under the Sixth Amendment by failing

to (a) object to the use of an improper venire, (b) challenge potential juror Laura Becerra for cause,

(c) question potential jurors during voir dire about future dangerousness and mitigation, (d) object

to "substantial amounts" of hearsay testimony, and (e) present specific mitigating evidence at the

punishment phase; (3) the State violated his Fifth Amendment right against self-incrimination when

the police failed to recognize the invocation of his right to counsel; and (4) insufficient evidence

supported the jury's answer to the future dangerousness special issue.

Respondent seeks summary judgment in this case.  (Docket Entry No. 7).  Respondent

contends that Petitioner's first three grounds for relief are procedurally barred.  Respondent also

contends that Petitioner's claims are all without merit.

## STANDARDS OF REVIEW

### I.    DEFERENCE UNDER THE AEDPA

---

[1]     Petitioner's successive habeas corpus application raised the same claims, nearly word-for-word, as presented in his initial and current federal petitions.

In federal habeas proceedings, the AEDPA circumscribes a court's summary judgment review. *See Proctor v. Cockrell*, 283 F.3d 726, 729-30 (5th Cir. 2002). The intent of the AEDPA is "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U. S. 685, 693 (2002); *see also Woodford v. Visciotti*, __ U. S. __, 123 S. Ct. 357, 360 (2002). In essence, the "AEDPA was enacted, at least in part, to ensure comity, finality, and deference to state court habeas determinations by limiting the scope of collateral review and raising the standard for federal habeas relief." *Robertson v. Cockrell*, 324 F.3d 297, 306 (5th Cir. 2003). To that end, the AEDPA provides that a federal habeas petition shall not be granted unless a petitioner's state proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

Deference under the AEDPA differs depending on whether the state court engaged in a legal, factual, or mixed inquiry. *See Gachot v. Stalder*, 298 F.3d 414, 417-18 (5th Cir. 2002). Federal courts analyze questions of law and mixed questions of law and fact under 28 U.S.C. § 2254(d)(1) and factual questions under 28 U.S.C. § 2254(d)(1). *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002); *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). The Supreme Court holds that a state court decision is "contrary to" federal precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) "the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413 (2000); *see also Bell*, 535 U.S. at 698; *Early v. Packer*, __ U.S. __, 123 S. Ct. 362, 365 (2002). A state court may unreasonably apply federal law if it "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the particular facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.[2] Under 28 U.S.C. § 2254(d)(2) "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El v. Cockrell*, __ U.S. __, 123 S. Ct. 1029, 1041 (2003).

## II.    EXHAUSTION OF REMEDIES AND PROCEDURAL BAR

The AEDPA precludes federal consideration of claims not adjudicated in state court. Under the AEDPA, a federal court cannot grant relief unless a petitioner "has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A).[3] The "exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v.*

---

[2]    The Fifth Circuit cautions that a federal habeas court's review under 28 U.S.C. § 2254(d) "should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*), *cert. denied*, __ U.S. __, 123 S. Ct. 963 (2003). Accordingly, this court focuses on "'determining the reasonableness of the state court's 'decision,' . . . not grading their papers.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001)), *cert. denied*, 535 U.S. 982 (2002).

[3]    However, a court may deny a habeas petition containing unexhausted claims. *See* 28 U.S.C. § 2254(b)(2).

*Thompson*, 501 U.S. 722, 731 (1991); *see also Deters v. Collins*, 985 F.2d 789, 794 (5th Cir. 1993) ("[I]f . . . an issue rests upon unresolved questions of fact or of state law, comity and judicial efficiency may require federal courts to insist on complete exhaustion to ensure that the court has a complete record to review.").

The related procedural default doctrine bars federal review of a petitioner's unexhausted claims. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). Federal habeas review is precluded "only if the state court 'clearly and expressly' stated that the state procedural ground was a basis for its decision independent of the federal-law ground." *Foster v. Johnson*, 293 F.3d 766, 786 (5th Cir.) (quoting *Coleman*, 501 U.S. at 735), *cert. denied sub nom.*, *Foster v. Epps*, __ U.S.__, 123 S. Ct. 625 (2002). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750-51), *cert. denied*, 523 U.S. 1125 (1998); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (finding the procedural default doctrine to be "grounded in concerns of comity and federalism").

The unexhausted nature of a claim first presented on federal review ordinarily prevents federal consideration. *See Horsely v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999). "A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (quoting *Coleman*, 501 U.S. at 734 n.1), *cert. denied*, 523 U.S. 1139 (1998). Texas courts

6

considering unexhausted claims on a successive habeas petition would find them procedurally barred under the abuse-of-the-writ doctrine. Article 11.071 § 5(a) of the Texas Code of Criminal Procedure generally prohibits a Texas court from considering a successive habeas application on the merits. The Fifth Circuit holds that article 11.071 is an adequate state procedural bar, finding that the rule is strictly and regularly enforced. *See Barrientes v. Johnson*, 221 F.3d 741, 759 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001); *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir.), *cert. denied*, 523 U.S. 1113 (1998).

A federal petitioner may overcome the procedural default of his claims after an adequate showing of cause and prejudice. The Supreme Court has noted that

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.[4]

The Court will consider the instant petition in light of the above-stated standards.

## ANALYSIS

## I.    PROCEDURALLY BARRED CLAIMS

Respondent contends that Petitioner procedurally defaulted each of his first three grounds for relief. With respect to each claim, Petitioner either attacks the adequacy of the state procedural bar or argues that cause and prejudice exist to overcome the default. Having considered his arguments, this Court finds that an adequate state law ground bars federal consideration of

---

[4]    The fundamental miscarriage of justice exception requires a showing of actual innocence. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Petitioner makes no effort to show that he is actually innocent of capital murder.

7

Petitioner's first three claims.

A.    **Ineffective-Assistance-of-Appellate-Counsel Claim**

Petitioner contends that appellate counsel rendered ineffective assistance by failing to raise two issues before the Court of Criminal Appeals: (1) that he was denied his right to cross-examination and confrontation when the State introduced the confession of Sixto Monterrubio and (2) that the trial court erred in allowing hearsay testimony at trial. Petitioner advanced his allegations against appellate counsel for the first time in his initial federal petition. Petitioner first presented the state courts with an opportunity to address his ineffective-assistance-of-appellate-counsel claim in his successive habeas application. The Court of Criminal Appeals dismissed Petitioner's successive habeas application as an abuse of the writ. Texas' abuse-of-the-writ doctrine acts as an adequate and independent bar to federal consideration his renewal of this claim in his instant petition. *See Barrientes*, 221 F.3d at 759; *Muniz,* 132 F.3d at 221.

Petitioner concedes that he procedurally defaulted this claim. (Docket Entry No. 9 at 5). Petitioner, however, argues that he can overcome the procedural bar by showing: (1) that his state habeas counsel rendered ineffective assistance under both the Sixth Amendment and due process clause; (2) that the Supreme Court's *Coleman* decision provides a gateway for the consideration of his claims; and (3) that the state courts relied on an inadequate procedural bar in denying this claim. This Court will consider each of these procedural defenses.

1.    *Ineffective assistance of habeas counsel*

Petitioner claims that the ineffective assistance of habeas counsel should allow the consideration of this defaulted claim in federal court. Also, Petitioner contends that state habeas counsel's representation violated his due process rights because of its non-compliance with Texas'

8

capital habeas corpus statute's guarantee to "competent" counsel. These allegations do not allow for federal review of his claims.[5]

Ineffective assistance of habeas counsel claims are not cognizable under the AEDPA. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Even before the enactment of the AEDPA, the Supreme Court recognized that "[t]here is no constitutional right to an attorney in state postconviction proceedings." *Coleman*, 501 U.S. at 752; *see also Murray v. Giarratano*, 492 U.S. 1, 4-13 (1989) (finding no constitutional right to appointed counsel in capital cases on state post-conviction review); *Pennsylvania v. Finley*, 481 U.S. 551, 555 ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). "Because a petitioner does not have a constitutional right to counsel in post-conviction habeas proceedings, it follows that a petitioner cannot claim ineffective assistance of counsel in such proceedings." *Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995), *cert. denied*, 516 U.S. 1120 (1996); *see also In re Goff*, 250 F.3d 273, 275 (5th Cir. 2001) ("The Supreme Court has explicitly held that there is no protected Sixth Amendment right to counsel in state post-conviction proceedings."); *Beazley*, 242 F.3d at 271 (finding claims involving representation during state habeas review to be barred by the AEDPA); *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir.) (finding that "infirmities in state habeas proceedings are not proper grounds for federal habeas relief"), *cert.*

---

[5]    The Court will initially note that, as with substantive claims, the grounds used to overcome a procedural bar can themselves be procedurally barred. *See Edwards*, 529 U.S. at 453. Petitioner exhausted his allegations of ineffective assistance by habeas counsel in his successive state application. Those allegations, however, were barred from state consideration by Texas' abuse-of-the-writ doctrine. It appears that Petitioner's claim that cause flows from habeas counsel's representation is itself procedurally barred.

*denied*, 532 U.S. 1070 (2001).

As there is no constitutional right to habeas representation, the Fifth Circuit has held that ineffective assistance of habeas counsel cannot serve as cause. *See Martinez v. Johnson*, 255 F.3d 229, 240 (5th Cir. 2001) (finding that "ineffectiveness of habeas counsel cannot provide cause for a procedural default"), *cert. denied*, 534 U.S. 1163 (2002); *Goff*, 250 F.3d at 276 (recognizing that the Supreme Court "has repeatedly emphasized that ineffective assistance of counsel in a post-conviction proceeding cannot serve as cause to excuse default in a federal habeas proceeding"); *Jones*, 171 F.3d at 277 ("The law is well-established, however, that such error committed in a post-conviction application, where there is no constitutional right to counsel, cannot constitute cause."); *Callins v. Johnson*, 89 F.3d 210, 212 (5th Cir.) (finding that "no error by habeas counsel can ever constitute cause for abusing the writ"), *cert. denied*, 519 U.S. 1017 (1996).

Petitioner further argues that Texas's statutory guarantee to habeas counsel created a due process right to effective assistance. Petitioner specifically relies on TEX. CODE CRIM. PRO. art. 11.071 § 2(d) which requires the Texas Court of Criminal Appeals "under rules and standards adopted by the court, [to] appoint competent counsel." Petitioner contends that, because Texas provides post-conviction review of death sentences under article 11.071 of the Texas Code of Criminal Procedure and then promises the appointment counsel under that statute, the State must follow the statutory requirements in accordance with federal due process principles.

Notwithstanding the state statute's requirement that Texas courts appoint "competent" counsel, the Fifth Circuit has rejected the suggestion that there is a due process entitlement to competent habeas representation. Petitioner argues that the Fifth Circuit's opinion in *Welch v. Beto*, 355 F.2d 1016, 1020 (5th Cir.), *cert. denied*, 385 U.S. 839 (1966), requires this Court to recognize

a due process right to competent post-conviction counsel. In *Welch*, the Fifth Circuit intimated that

a due process right may exist in state post-conviction proceedings. *Id.* The Fifth Circuit, however,

has explained *Welch*'s precedential value:

> While the *Welch* holding does hint at some form of due process right once a state decides to provide a non-constitutionally obligated service, the Supreme Court has spoken quite explicitly on this subject since *Welch* and has repeatedly emphasized that ineffective assistance of counsel in a post-conviction proceeding cannot serve as cause to excuse default in a federal habeas proceeding. To that extent, at least, *Welch* has been overruled and is no longer valid law in this circuit.

*Goff*, 250 F.3d at 276. The Fifth Circuit has foreclosed Petitioner's reliance on *Welch*. Texas'

statutory provision requiring the appointment of "competent" counsel does not create a due process

right that overcomes the procedural bar or defaulted claims. *See Ogan v. Cockrell*, 297 F.3d 349,

357 Cir. 2002), *cert. denied,* __ U. S. __, 123 S. Ct. 582 (2002); *Martinez*, 255 F.3d at 245-46; *Goff*,

250 F.3d at 274-76.[6]

---

[6]    In a related argument, Petitioner contends that *Coleman* authorizes a court to find cause through the ineffective assistance of habeas counsel when the State bears responsibility for his deficiency. In *Coleman*, the Supreme Court explained that

> Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails. *A different allocation of costs is appropriate in those circumstances where the State has no responsibility to ensure that the petitioner was represented by competent counsel.* As between the State and the petitioner, it is the petitioner who must bear the burden of a failure to follow state procedural rules. In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation . . . .

*Coleman*, 501 U.S. at 754 (emphasis added). Petitioner argues that this statement allows habeas representation to constitute cause when such representation is guaranteed by state statute. Petitioner fails to recognize the weighty case law indicating that there is no *federal constitutional right* to habeas representation. Texas' promise of appointed counsel in capital habeas proceeding does not make it "responsible . . . as a constitutional matter" for the actions of habeas counsel. *Id.*

2.      *Creation of a "Coleman exception" to the procedural default doctrine*

Petitioner seeks to establish cause by arguing that his initial habeas proceeding was the first, and essentially only, opportunity for him to present his federal constitutional claims in state court. Petitioner contends that, since habeas counsel allegedly provided ineffective assistance, he could not present his ineffective-assistance-of-appellate-counsel claim in that forum. Petitioner argues that the Supreme Court in *Coleman v. Thompson* provided for entitlement to effective assistance of habeas counsel when state habeas review would be the first place a claim could be advanced.

In *Coleman*, the Supreme Court noted that ineffectiveness of state habeas counsel could not constitute "cause" for procedural default unless an exception applied for "those cases where state collateral review is the first place a prisoner can present a challenge to his conviction." *Coleman*, 501 U.S. at 755. The Supreme Court, however, declined to establish such an exception and decided the case on other grounds. *Id.* No court has ever recognized a "*Coleman* exception" legitimatizing ineffective-assistance-of-state-habeas-counsel claims. *See Martinez*, 255 F.3d at 241; *Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997), *cert. denied*, 522 U.S. 1100 (1998); *Hill v. Jones*, 81 F.3d 1015, 1024-26 (11th Cir. 1996), *cert. denied*, 519 U.S. 1119 (1997); *Bonin v. Calderon*, 77 F.3d 1155, 1159-60 (9th Cir.), *cert. denied*, 516 U.S. 1143 (1996); *Nolan v. Armontrout*, 973 F.2d 615, 616-17 (8th Cir. 1992). Fifth Circuit case law applies *Coleman* to all habeas proceedings, without the limitation Petitioner urges. *See generally, Martinez*, 255 F.3d at 241. This Court could only grant habeas relief in this case by applying a *Coleman* exception and creating a new constitutional rule, a step that would violate the non-retroactivity principle established in *Teague v. Lane*, 489 U.S. 288 (1989). *See Martinez*, 255 F.3d at 241 n.15.

3.      *Adequacy of* TEX. CODE CRIM. PRO. *article 11.071 § 5(a)*

12

Finally, Petitioner contends that the state procedural law at issue (Texas' abuse-of-the-writ doctrine) should be considered inadequate with respect to the specific circumstances present in his habeas review. Petitioner contends that Texas' appointment of an allegedly ineffective attorney deprived him of his constitutional rights and then inequitably placed him in a situation where his subsequently raised claims would be inevitably denied as an abuse of the writ. Pointing to recent Supreme Court authority, Petitioner contends that the circumstances of his case should render Texas' abuse-of-the-writ doctrine inadequate to bar federal consideration of his claims.

The Supreme Court recently emphasized that there exists a "small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim." *Lee v. Kemna*, 534 U.S. 362, 381 (2002). "Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review of a federal claim. There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Id.* at 376 (internal quotations and citations omitted).

Petitioner argues that the state court violated his due process rights through the appointment of ineffective habeas counsel, thus rendering the application of the abuse-of-the-writ doctrine to his claims an exorbitant exercise as condemned in *Kemna*. Petitioner's argument, however, is solely premised on the existence of a due process right to effective habeas representation. As discussed above, Petitioner cannot establish a constitutional violation arising out of his initial state habeas counsel's representation. As Petitioner cannot show a due process violation, he also cannot establish that such a violation resulted in the exorbitant application of state procedural law which should allow for the federal consideration of his claims.

Petitioner fails to provide an adequate basis to overcome the procedural bar of his ineffective-

13

assistance-of-appellate-counsel claim. This Court, therefore, finds that claim barred from federal review. As the state courts refused to consider the substance of his ineffective-assistance-of-appellate-counsel claim, this Court likewise will not address its merits. This claim is denied.

### B.     Ineffective-Assistance-of-Trial-Counsel Claim

Petitioner contends that trial counsel rendered ineffective assistance. Citing several specific areas of alleged misconduct, Petitioner maintains that his counsel did not represent him in a manner consistent in the Sixth Amendment. Respondent argues that Petitioner has failed to fairly present his ineffective-assistance-of-trial-counsel claim to the state courts, contending that Petitioner's claim in his current federal petition exceeds the parameters of the claim advanced on the initial state post-conviction review. Petitioner agrees with Respondent that this claim is unexhausted. (Docket Entry No. 9 at 32). This claim, however, is barred from federal review based on Texas' reliance on the abuse-of-the-writ doctrine in his successive habeas proceedings, not because of nonexhaustion.

When Petitioner presented this claim in his initial federal petition, it was unexhausted. In his initial state habeas review, petitioner presented a claim that "[t]he applicant was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under Article I, Section 10 of the Texas Constitution, in that he was denied the ineffective assistance of counsel during both the guilt and punishment phases of trial." State Habeas Record at 10. Petitioner, however, did not present any factual or legal basis for this assertion. Petitioner did not alert the state court to his current claim involving at least five areas in which trial counsel rendered ineffective assistance. Petitioner, therefore, did not provide the state court with a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson*, 459 U.S. at 6-7 (quoting *Picard v. Connor*, 404 U.S. 270, 27-77 (1971)). Petitioner's failure to present the

14

substantive basis for his claim to the state courts rendered it unexhausted *as presented in his initial federal petition.*[9]

Petitioner, however, exhausted this claim in his successive habeas corpus proceedings. In his successive habeas application, Petitioner raised his ineffective-assistance-of-trial counsel nearly word-for-word as presented in federal court. The procedural deficiency in Petitioner's pleadings, therefore, stems from Texas' refusal to consider this claim as a result of its adequate and independent abuse-of-the-writ doctrine, not because of the claim's unexhausted nature in his first federal petition.

In his successive state proceedings Texas found that Petitioner defaulted this claim. Petitioner presents no argument that would overcome the state procedural bar.[10] Petitioner's ineffective-assistance-of-trial counsel claim is procedurally barred.

### C.   Fifth Amendment Claim

Petitioner claims that the State violated his Fifth Amendment protection against self-incrimination by interrogating him after he invoked his right to counsel. Petitioner contends that at one point during his interrogation he asked the police "to ask his uncle to get him an attorney, if he needed one. The officer did as he was asked. [Petitioner's uncle] then told the Petitioner to tell the truth and 'whoever may fall, you tell the truth.' 'Caigan quien caigan. Tu digas la verdad.'" (Docket

---

[9]    Further, the state habeas court procedurally dismissed Petitioner's superficially-presented ineffective-assistance-of-trial-counsel claim in his initial habeas application. Supplemental State Habeas Record at 42, ¶¶ 5-6. Even if Petitioner's expansion of the Sixth Amendment claim on federal review did not render it unexhausted, the state habeas court's exercise of its procedural law would have barred federal review of his claim unless Petitioner demonstrated cause and prejudice.

[10]   Petitioner makes the argument that "an absence of available State corrective process," 28 U.S.C. § 2254(b)(1)(B)(i), should allow consideration of this claim. That section of the AEDPA allows federal consideration of *unexhausted* claims under narrow circumstances; it does not serve as a basis to overcome a procedural bar.

Entry No. 1). The police continued interrogating Petitioner and secured his confession to the murder.

Petitioner's Fifth Amendment claim is procedurally barred from federal consideration on two separate grounds. First, Petitioner's initial presentation of this claim on direct review resulted in a procedural bar due to his inadequate briefing of the issue. On direct review to the Court of Criminal Appeals, Petitioner argued that the trial court erred in admitting his confession into evidence because the State ignored his direct request for an attorney. Petitioner provided a page of general principles relating to confessions before stating "[i]n the case at bar, Appellant testified that he told Officer Sam Lucio 'Hey, I think I'm in some serious trouble here. I need a lawyer . . .' However, the interrogation and interviews were not terminated by the police officers." Appellant's Brief on Direct Appeal, at 9-10. The Court of Criminal Appeals held that Petitioner failed to identify the specific legal theory upon which he based his contention. The Court of Criminal Appeals procedurally dismissed his claim based on former Texas Rule of Appellate Procedure 74(f).[11] Specifically, the Court of Criminal Appeals noted that "[a]ppellant's general assertions that his right to counsel was violated is inadequate briefing because it leaves this Court guessing as to appellant's factual and legal argument and would require us to make *sua sponte* arguments for appellant. We will not brief an appellant's case for him." Opinion at 6.

The Court of Criminal Appeals dismissed that claim on procedural grounds. Former TEX. R. APP. P. 74(f) provided as follows:

> A brief of the argument may present separately or grouped the points relied upon for reversal. The argument shall include: (1) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. If complaint is made of any part of the charge given or refused, such part of

---

[11]    This appellate rule has been renumbered as Rule 38.1(h).

> the charge shall be set out in full. If complaint is made of the improper admission or
> rejection of evidence, the substance of such evidence so admitted or rejected shall be set out
> with references to the pages of the record where the same may be found. Repetition or
> prolixity of statement or argument must be avoided. Any statement made by appellant in his
> original brief as to the facts or the record may be accepted by the court as correct unless
> challenged by the opposing party.

Texas courts have relied on this provision to dismiss inadequately-presented claims for many years.

A petitioner bears the burden of showing the inadequacy of a state procedural rule. *See Hughes v.*

*Johnson*, 191 F.3d 607, 614 (5th Cir. 1999) (finding that the doctrine of procedural default in a

§ 2254 action "presumes that a state procedural ground is adequate and independent . . . and

ordinarily, the burden is on the habeas petitioner to demonstrate otherwise"), *cert. denied*, 528 U.S.

1145 (2000); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) ("We presume the adequacy and

independence of a state procedural rule when the state court expressly relies on it . . . ."). Petitioner

does not argue that the rule has not been consistently applied, and the Court can find no evidence that

it has not been. Insofar as Petitioner's federal claim is the same as that raised on direct review, a

procedural bar prevents federal consideration

Second, a procedural bar results from Petitioner's expansion of this claim in his successive

state habeas proceedings. On direct appeal, Petitioner challenged his conviction on the basis of a

request he made directly to a police officer ("Hey, I think I'm in some serious trouble here. I need

a lawyer . . . ."). In his successive state application, Petitioner raised a Fifth Amendment claim based

on an entirely different statement to the police: his request to have his uncle secure legal

representation if necessary. Petitioner relied on a different factual basis than he did on direct

review.[12] The Court of Criminal Appeals refused to consider Petitioner's expansion of that claim

---

[12]    In a footnote, the Court of Criminal Appeals, apparently *sua sponte*, discussed Petitioner's
(continued...)

due to its abuse-of-the-writ doctrine. As Petitioner makes no argument to overcome that procedural inadequacy, his renewal of the claim in his present federal petition is procedurally barred.[13]

## II.    INSUFFICIENCY OF THE EVIDENCE

Only Petitioner's insufficiency-of-the-evidence claim is properly presented for federal consideration.[14] Petitioner contends that the evidence at trial would not allow a reasonable jury to find that he would be a future danger to society. Petitioner argues that, however brutal the murder may have been, other factors detract from a reasonable jury answering "yes" to the first ("future dangerousness") special issue which asked: "Is there a probability that the defendant, Jose Ignacio Monterrubio, would commit criminal acts of violence that would constitute a continuing threat to society?" Petitioner maintains that his youth at the time of the murder, his previously unblemished criminal record, and the lack of psychiatric evidence of future threat would favor a life sentence rather than the death penalty he received. Petitioner asks this Court to declare that insufficient evidence supported the jury's answer to the future dangerousness special issue.

In determining the sufficiency of the evidence, this Court asks "whether after reviewing the

---

[12]    (...continued)
request *as it related directly to a conversation with his uncle.* The Court of Criminal Appeals considered that a "private matter involving no State action." Opinion, at 6 n.6. Petitioner never gave the Court of Criminal Appeals an opportunity to address the implication of Petitioner's request *to the police* that they have his uncle secure representation if necessary.

[13]    Even if this Court were to review the merits of this claim, Petitioner's alleged invocation of his right to counsel was neither unambiguous nor sufficient clear so that a police officer would consider it a request for an attorney. *See Davis v. United States*, 512 U.S. 452, 459 (1994); *Soffar v. Cockrell*, 300 F.3d 588, 594-95 (5th Cir. 2002).

[14]    Although Petitioner presented this claim in his successive state habeas application that was dismissed as an abuse of the writ, the Court of Criminal Appeals reviewed the merits of this claim on direct review.

evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307,

319 (1979); *see also Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.) (applying the *Jackson* standard

in the capital context), *cert. denied*, 531 U.S. 849 (2000).  In determining the sufficiency of the

evidence, this Court may not substitute its view of the evidence for that of the fact finder, but must

consider all of the evidence in the light most favorable to the prosecution. *See Jackson*, 443 U.S.

at 319; *Miller*, 200 F.3d at 286 ("This Court examines all the evidence in the light most favorable

to the verdict to determine whether any rational trier of fact could have found the issue in

controversy to have been proven beyond a reasonable doubt.").  On direct review, the Court of

Criminal Appeals found there to be sufficient evidence supporting the "future dangerousness" special

issue.  This Court will review that determination under the AEDPA.

Under Texas law, the circumstances surrounding a crime may alone have been sufficient to

uphold a jury's finding on the future dangerousness special issue. *See Dinkins v. State*, 894 S.W.2d

330, 358 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995); *Kunkle v. State*, 771 S.W.2d 435, 449

(Tex. Crim. App. 1986), *cert. denied*, 492 U.S. 925 (1989).  Evidence of the crime is sufficient so

long the Court finds the "circumstances to be so heinous as to display a 'wanton and callous

disregard for human life.'" *Dinkins*, 894 S.W.2d at 358 (quoting *Deeb v. State*, 815 S.W.2d 692, 703

(Tex. Crim. App. 1991)).  The Court of Criminal Appeals has described the review of the future

dangerousness issues as follows:

> we first look at the facts of the crime itself.  If the offense was shown to be sufficiently cold-
> blooded or calculated, then the facts of the offense alone may support a finding that the
> defendant will pose a continuing threat to society.  If, however, the facts of the case were not
> sufficiently compelling, we look for other evidence to support the jury's finding, such as
> psychiatric evidence, character evidence, prior criminal record, prior extraneous offenses,

and possible mitigating factors such as the defendant's youth or state of mind at the time of the offense.

*Kunkle*, 771 S.W.2d at 449. The Fifth Circuit has approvingly cited the Texas rule concerning the review of the future-dangerousness question. *See Martinez*, 255 F.3d at 245.[15]

In Petitioner's case, the Court of Criminal Appeals found that the circumstances of the murder alone supported a finding of "future dangerousness." Opinion at 4. The Court of Criminal

---

[15]    The Court recognizes that the Fifth Circuit, in the context of a harmless-error discussion, recently criticized

> the State's stereotypical fall-back argument [finding ] that the heinous and egregious nature of the crime would have ensured assessment of the death penalty even absent the psychiatric testimony about future dangerousness--cannot carry the day here. First, that argument cannot prevail without eviscerating the Supreme Court-approved Texas "special issues" scheme. To permit a jury to impose the death sentence solely because the facts are heinous and egregious would be to return to the days of inflicting capital punishment based on emotion and revenge, supplanting altogether the questions of deliberateness and future dangerousness which make the Texas scheme constitutional. . . . Finally, our decades of experience with scores of § 2254 habeas cases from the death row of Texas teach an obvious lesson that is frequently overlooked: Almost without exception, the cases we see in which conviction of a capital crime has produced a death sentence arise from extremely egregious, heinous, and shocking facts. But, if that were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief based on evidentiary error in the punishment phase would virtually never be available, so testing for it would amount to a hollow judicial act.

*Gardner v. Johnson*, 247 F.3d 551, 563 (5th Cir. 2001). The analysis that accompanies this insufficiency claim differs from the situation present in *Gardner*. This Court does not excuse constitutional error through a harmlessness analysis; rather, the Court's reliance on the horrendous facts of this case complies with *Jackson*'s deference to the jury verdict. At any rate, the circumstances of the crime are not the lone basis for the imposition of a death sentence in Texas. Texas' imposition of the death sentence is a confluence of a finding of guilt, a finding of future dangerousness, and a finding of no sufficient mitigating evidence. This procedure militates against an arbitrary imposition of the death penalty due to the heinous nature of a murder alone. Here, even though the Court of Criminal Appeals found that the circumstances of the crime alone support future dangerousness, Petitioner's death sentence was also based on a conviction of a special category of murder and a review of mitigating evidence. The language in *Gardner* is inapplicable to the current claim.

20

Appeals described the facts of this case as follows:

> According to the record, the victim, a minor, was a "friend" of appellant's cousin, Sixto, and was accustomed to sneaking out of her parent's home in their company. According to appellant's confession, he and Sixto had to some degree premeditated and planned this crime. As the three rode in Sixto's car in the late night hours of the night of the offense, Sixto and appellant attacked the victim, beating her about the head with a crow-bar. Appellant confessed that he struck the victim with the crow-bar and threatened to hit her again if she did not submit to him and Sixto. Under these threats she submitted. She was stripped and her hands tied with a leather shoelace from appellant's boot. Appellant and Sixto then proceeded to anally, vaginally, and orally sexually assault her throughout the night, driving from location to another so as to avoid being detected. Appellant recounted in his confession that at one point the victim managed to escape from Sixto's car, was quickly apprehended, beaten into submission and dragged back to the car begging for her life. Appellant also recounted that as he raped her, the victim begged for her life, promising that since she was their friend, she would not tell anyone about the incident. Appellant described how he turned up the car radio so the victim's pleas for help could not be heard.
>
> As morning approached, Sixto and appellant drove the victim, as she begged for her life, to a secluded place. Appellant asserts that he attempted to choked [*sic*] her to death with a towel, but was unable to kill her. They drove to another location, where Sixto unsuccessfully attempted to choke the victim to death. Appellant then stabbed the victim's neck with a pocket knife. As she began to choke on her own blood, appellant and Sixto took turns, trying unsuccessfully to break her neck. Unable to break her neck, they began to beat her. Appellant beat her head with a stick, breaking her jaw. Appellant then retrieved a can of tire-foam from the car for Sixto to spray the foam into the victim's nose and mouth. Still the victim clung to life. Exasperated, Sixto and appellant drove the victim to yet another location. There, appellant took his shirt off, wrapped it around the victim's face and smothered her until she died, ten to twenty minutes later. Appellant and Sixto moved the victim's body several times before they led the police to the decomposed remains.

Opinion on Direct Review ("Opinion") at 4-5.

The material federal question is simply whether any rational trier of fact could have found that Petitioner would commit violent acts in the future. Under the AEDPA's deferential review this Court cannot say, in light of the horrific circumstances of the crime, that the Court of Criminal Appeals' decision was in error. The Court of Criminal Appeals appropriately utilized the *Jackson* standard. Applying the *Jackson* standard, the Court of Criminal Appeals found that a reasonable jury

could decide that Petitioner would constitute a future threat to society. The Court of Criminal Appeals found that

> [t]he extreme brutality and violence of this offense betrays a most dangerous aberration of character from which a rational juror could conclude that appellant poses a continuing threat to society. Appellant's case presents a brutal killing, which required a sustained effort to kill the victim over a prolonged period of time. The betrayal of the relationship of trust between the victim and her assailants also bespeaks a particularly cruel character, as do the repeated insults and humiliations to the person of the victim. A rational jury could find that a young man capable of inflicting such fatal humiliation and brutality upon a "friend," without any sign of remorse or regrets, is a continuing threat to society.

Opinion at 5.

Petitioner participated in the brutal rape and drawn-out murder of a young girl. A reasonable jury could find that Petitioner would be a future societal threat from those facts alone. The Court of Criminal Appeals' resolution of that question was not contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1). Petitioner's insufficiency-of-the-evidence claim is denied.

### CERTIFICATE OF APPEALABILITY

Although Petitioner has not yet requested a Certificate of Appealability ("COA"), the issue of a COA is likely to arise. This court may deny a COA *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).[16] The Supreme Court has explained the standard for evaluating the

---

[16] The Supreme Court in *Miller-El v. Cockrell*, __ U.S. __, 123 S. Ct. 1029 (2003), recently reversed a case from the Fifth Circuit involving the application of the COA standard. Prior to *Miller-El*, the Fifth Circuit resolved the question of COA in some cases by first determining whether a petitioner was entitled to relief, and then denying COA because the appeal lacked merit. In *Miller-El*, the Supreme Court clarified a *circuit court*'s role in the COA process. The *Miller-El* Court found that a circuit court's COA analysis should not rest upon a "full consideration of the factual or legal bases adduced in support of the claims." *Miller-El*, __ U.S. at __, 123 S. Ct. at 1039 (2003). Rather, "[t]he COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* (emphasis added). Thus, the Supreme Court held that
(continued...)

issuance of a COA as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El*, __ U.S. at __, 123 S. Ct. at 1039-40.

The Court has carefully considered each of Petitioner's claims. The Court finds that each of his claims is foreclosed by clear, binding precedent. Under the appropriate standards, this Court concludes that Petitioner has failed to make a "substantial showing of the denial of a constitutional right" with respect to each issue raised in his petition. 28 U.S.C. § 2253(c)(2). This Court concludes that Petitioner is not entitled to a COA on any of his claims.

## RECOMMENDATION

"Though the penalty is great and our responsibility heavy, our duty is clear." *Rosenberg v. United States*, 346 U.S. 273, 296 (1953). For the foregoing reasons, this Court finds that there are no genuine issue of material fact and that Respondent is entitled to summary judgment. This Court

---

[16]    (...continued)

"[w]hen a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying the denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction." *Id.* at 1039. A district court's evaluation of the COA *sua sponte* does not raise the same jurisdictional concerns present in *Miller-El*. While *Miller-El* rejected the Fifth Circuit's review of the merits of a claim before that claim was properly before the circuit court, the same jurisdictional concern is not present when a district court evaluates a COA *sua sponte* before appeal. This Court clearly has jurisdiction to decide *sua sponte* whether a COA is warranted.

recommends that Respondent's motion for summary judgment (Docket Entry No. 7) be **GRANTED,** that Petitioner's petition (Docket Entry No. 1) be **DENIED,** that the District Court *sua sponte* **DENY** a Certificate of Appealability on all issues, and that this case be **DISMISSED**.

**NOTICE TO PARTIES**

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas this 5th day of May, 2003.

Felix Recio<br/>
UNITED STATES MAGISTRATE JUDGE

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JOSE IGNACIO MONTERRUBIO,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **C.A. NO. B-02-204** |
| | § | |
| **JANIE COCKRELL,** | § | |
| **Director, Texas Department of** | § | |
| **Criminal Justice, Institutional Division** | § | |
| **Respondent.** | § | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Court has reviewed the Magistrate Judge's Report and Recommendation regarding Respondent's Motion for Summary Judgment (Docket Entry No. 7). After having conducted a *de novo* review of the entire file, the Court is of the opinion that said Report and Recommendation should be adopted.

It is, therefore, **ORDERED** that the Report and Recommendation is hereby **ADOPTED**, and Respondent's motion for summary judgment is **GRANTED**. It is further **ORDERED** that, for those reasons outlined in the Report and Recommendation, a Certificate of Appealability is **DENIED** as to all issues raised by Petitioner.

DONE on this ___ day of _____, 2003, at Brownsville, Texas.

_____
Hilda Tagle
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JOSE IGNACIO MONTERRUBIO,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **C.A. NO. B-02-204** |
| | § | |
| **JANIE COCKRELL,** | § | |
| **Director, Texas Department of** | § | |
| **Criminal Justice, Institutional Division** | § | |
| **Respondent.** | § | |

## ORDER

The Court having adopted the Report and Recommendation of United States Magistrate Judge Felix Recio in Order of even date herewith is of the opinion that the action of petitioner Jose Ignacio Monterrubio should be **DISMISSED**.

It is, therefore, **ORDERED** that this action is hereby **DISMISSED**. This is a final judgment.

DONE at Brownsville, Texas on this ___ day of _____, 2003.

<br>

_____
Hilda Tagle
UNITED STATES DISTRICT JUDGE