*12*

United States District Court
Southern District of Texas
FILED

MAY 2 0 2003

Michael N. Milby
Clerk of Court

**IN THE
UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **JOSE IGNACIO MONTERRUBIO,** | X | |
| **PETITIONER** | X | |
| **V.** | X | **CAUSE NO. 02-CV-204** |
| | X | |
| **JANIE COCKRELL, Director** | X | |
| **Institutional Division, Texas** | X | |
| **Department of Criminal Justice** | X | |

**PETITONER'S OBJECTIONS TO MAGISTRATE'S REPORT**

Comes now the Petitioner, Jose Ignacio Monterrubio to file the following objections to

the Magistrate's Report:

**I.**

Mr. Monterrubio is a death sentenced inmate whose petition for writ of habeas corpus is

currently pending before this Court. The Magisrate Judge, the Honorable Felix Recio, issued his

report recommending that relief be denied on May 5, 2003. [1]

**II.**

Mr. Monterrubio has presented a number of claims that were procedurally defaulted in the

state habeas proceedings because of state habeas counsel's ineffectiveness. The undersigned

counsel's pleadings set forth adequately that context of that issue:

> As noted in the petition, Mr. Monterrubio was convicted, in 1994, of capital
> murder in Cause no. 93-CR-1756-B in the 138[th] District Court of Cameron County, Texas

---

[1]. The undersigned counsel was served with a copy of that report on May 7, 2003 when
the report was faxed to his office. Thus, under Fed.R.Civ. Proc 6(a), these objections are due to
be filed by Wednesday May 21, 2003. "When the period of time prescribed or allowed is less
than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the
computation."

and sentenced to death.  The trial lasted only two weeks.  He was then a 17 year old boy who had never been convicted of any other criminal offense and had never participated in any criminal activity. His trial lasted a total of two weeks, including jury selection.  He was represented by a lawyer who had been his lawyer for only two months and was paid the sum of $5000.00 to represent him.[2]  The jury was picked in five days and was selected, not from a special venire as required by Texas law, but from a jury pool which had already been the subject of criminal voir dire.  Some of those summoned had already served on other juries one week earlier. Two members of the jury served on a jury the week before, one on a jury for the offense of murder and the other for the offense of aggravated assault. The prosecution, over defense counsel's objection, was permitted to introduce the confession of the codefendant, without calling him to the stand for cross examination.  No investigation into potential punishment evidence was conducted by trial counsel. The family was simply called a few days before trial commenced and told to assemble at the court house as witnesses.

After Mr. Monterrubio was convicted, his legal situation get even worse.  He was represented on appeal by Arnold Pena, who filed the appellate brief only after a show cause order was issued by the Court of Criminal Appeals that threatened Mr. Pena with contempt of court.  The brief filed by Mr. Pena was only thirteen pages long and ignored vital points of error that would have assured Mr. Monterrubio a new trial, including the denial of Mr. Monterrubio's right of cross examination.  Mr. Pena was paid $2500 for his work.  The Court of Criminal Appeals affirmed the conviction and death sentence after finding some of the points of error raised to be inadequately briefed.

Mr. Monterrubio's legal posture became even more tenuous when state habeas counsel was appointed.  The state writ of habeas corpus was only seven pages long. The allegations of the writ merely set forth bare bones constitutional claims and recited no factual development or legal arguments.  State habeas counsel, according to the trial court, never asked for a hearing except on the issue of whether international law forbade the execution of someone who was 17 at the time of the offense.  The state habeas judge found most of the claims inadequately presented so that it was impossible for the Court to decide the merits of Mr. Monterrubio's claims. [3] Like Mr. Pena before him, state habeas counsel ignored a number of issues that would have assured Mr. Monterrubio of a new trial.

The principal issue ignored by both appellate and habeas counsel was the introduction

---

[2]. Mr. Monterrubio was first represented by counsel retained by the family, Walter Pink of Houston, Texas who withdrew about three months before trial.  The trial court then appointed a Mr. Jose Esquivel to represent Mr. Monterrubio but Mr. Esquivel withdrew one month later. In August, 1994, Mr. Afredo Padilla was appointed to represent Mr. Monterrubio.  Jury selection started in October, 1994 and two weeks later, Mr. Monterrubio was sentenced to death.

[3]. State habeas counsel raised two claims in a supplemental filing but those two claims were also dismissed because counsel had failed to establish sufficient facts to prove those allegations.

into evidence of the confession of the codefendant Sixto Monterrubio.  It was this confession that

provided the only evidence to corroborate the petitioner's confession on the issue of sexual

assault and thus, sustain petitioner's conviction.  See Monterrubio v. State, unpublished opinion

(part of state record brought forth to this Court by the respondent).

Mr. Monterrubio sought to excuse the procedural default by arguing his counsel's

ineffectiveness.  The Magistrate Judge rejected those arguments.

A. Is Mr. Monterrubio's claim of ineffective state habeas counsel itself procedurally defaulted?

In footnote 5 of his opinion, Judge Recio noted that Mr. Monterrubio's claim of

ineffective state habeas counsel was itself procedurally defaulted because the allegation was

barred by Texas abuse of the writ doctrine embodied in Art. 11.071, Sec. 5, V.A.C.C.P.  See page

9 of Magistrate Judge's Report. The application of procedural default in that context was excused

because Mr. Monterrubio was being represented by the very lawyer whose ineffectiveness is

being challenged here. See e.g.**Jordan v. Hargett**, 34 F.3d 310, 314-15 (5th Cir. 1994) rehearing

en banc, 42 F.3d 1483, vacated on other grounds, 53 F.3d 94 (1995);  **Walker v Gibson**, 228

F.2d 1217, 1231-32 (10th Cir. 2000); **Bloomer v United States**, 162 F.3d 187, 192 (2nd Cir. 1998)

(failure to raise ineffective assistance of counsel on direct appeal and in first section 2255 claim

were excused because same lawyer represented petitioner until second 2255 motion which was

the first real opportunity to raise the IAC claim; **Jackson v. Shanks**, 143 F.3d 1313, 1318-19

(10th Cir. 1998); **Robinson v. Norris**, 60 F.3d 457, 459-60 (8th Cir. 1995); **Ciak v United States**,

59 F.3d 296, 303 (2nd Cir. 1995); **United States v. Galloway**, 56 F.3d 1239, 1241 (10th Cir.

1995); **Osborn v Shillinger**, 861 F.2d 612, 622-23 (10th Cir. 1988); **Alston v. Garrison**, 720

F.2d 812, 816 (4th Cir. 1983); **Guzzardo v. Bengston**, 642 F.2d 1300, 1304 (7th Cir. 1981)

(attorney cannot be expected to allege his own incompetence); **Dawan v. Lockhart**, 980 F.2d

470, 473-74 (8th Cir. 1992).  Mr. Monterrubio's state habeas counsel could hardly have been in a position to allege his own ineffectiveness; any procedural default should have been excused.

As to prejudice, it is clear that had state habeas counsel challenged the admission into evidence of Sixto Monterrubio's confession on the basis of the **Lilly v Virginia**, 527 U.S. 116 (1999), it is very likely relief would have been granted.

### B. Procedural default

As objections to the Magistrate's report, counsel urges the same issues before this Court as he urged in his summary judgment response.  Counsel concedes that the Fifth Circuit has decided two of these arguments adversely to his position but reserves his right to challenge those holdings before that Court. As noted, these claims are procedurally defaulted.  To obviate the effect of that default, Mr. Monterrubio must establish both cause and prejudice. Cause lacks any precise definition but generally means some objective factor external to the defense that impeded counsel's efforts to raise the claim.  See **Murray v Carrier**, 477 U.S. 478 (1986). This has included state official interference, **Dobbs v Zant**, 506 U.S. 357 (1993) ( state official's assertion that final arguments had not been transcribed prevented counsel from securing transcripts); or that the factual or legal basis for the claim was not reasonably available to counsel at the time of the default, **Coleman v Thompson**, 501 U.S. 711 (1991).  Ineffective assistance of counsel is such a cause **ONLY if** there is a constitutional requirement for effective assistance for a particular proceeding. See **Murray v Carrier** supra; **Coleman v. Thompson** supra.  Mr. Monterrubio concedes that the Fifth Circuit has decided his argument adversely. See **Irving v Hargett**, 59 F.3d 23, 26 (5th Cir. 1995); **In re Goff**, 250 F.3d 273, 275 (5th Cir. 2001); **Martinez v Johnson**, 255 F.3d 229, 240 (5th Cir. 2001).

In the state habeas action, appointed counsel filed only a seven page writ of habeas corpus

which failed to meet even minimal standards for state writs of habeas corpus. It contained only boiler plate allegations of constitutional violations with no factual or legal development. State habeas counsel, according to the trial court, never asked for a hearing except on the issue of whether international law forbade the execution of someone who was 17 at the time of the offense. The state habeas judge found most of the claims inadequately presented so that it was impossible for the Court to decide the merits of Mr. Monterrubio's claims. [4] Like Mr. Pena before him, state habeas counsel ignored a number of issues that would have assured Mr. Monterrubio of a new trial.

There can be little question of the futility of Mr. Monterrubio's state habeas pleadings. In **Ex parte Maldonado**, 688 S.W.2d 114 (Tex.Crim.App. - 1985) the Court entered the following order:

> In a postconviction collateral attack, the burden is on the Applicant to allege and prove facts which, if true, entitle him to relief. In the context of an allegation of an egregiously erroneous charge, one which rises to the level of having denied the applicant a fair and impartial trial, this requirement of pleading will be strictly pursued. In other words, it is not sufficient that the petition alleges the denial of a fair and impartial trial or due process of law, which are mere conclusions of law; neither is it adequate to allege the bare fact that the court's charge was somehow erroneous.
>
> Rather, the applicant must allege the reasons a given error in the charge, in light of the trial as a whole, so infected the procedure that the applicant was denied a fair and impartial trial. Once alleged, the burden on the applicant to prove such a denial is heavy and cannot be carried by merely attaching a certified copy of the court's charge to the application for writ of habeas corpus, as was done here.

---

[4]. State habeas counsel raised two claims in a supplemental filing but those two claims were also dismissed because counsel had failed to establish sufficient facts to prove those allegations.

> The application before us utterly fails to allege facts
> which, if true, entitle the applicant to collateral
> relief; the application is accordingly dismissed. This
> dismissal is without prejudice to applicant's right to replead
> and support this allegation with adequate reasoning, argument
> and testimonial and recorded evidence which illustrates the
> error so infected the trial process as to deny him a fair and
> impartial trial.

**Ex parte Maldonado**, 688 S.W.2d at 116.

See also **Ex parte Shook**, 59 S.W.3d 174, 176 (Tex.Crim.App. - 2001)(dissenting

opinion, PJ Keller); **Ex parte McPherson**, 32 S.W.3d 860 (Tex.Crim.App. - 2000)("Applicant

contends that his trial counsel was ineffective because he failed to file various pretrial motions,

including a motion in limine, a motion for speedy trial, a motion to quash, and a motion for

appointment of an investigator.  Applicant does not allege any specific facts showing why these

motions were  needed in this particular case.  Applicant also argues that his counsel failed to

object to inadmissible evidence, but again he states only conclusions without any supporting

facts. Therefore, Applicant has failed to allege facts which, if true, would entitle  him to relief")

**Ex parte San Migel**, 973 S.W.2d 310, 311 (Tex.Crim.App. 1998) ("It is not sufficient for a

habeas petition to allege the denial of a fair and impartial trial or due process of law, which are

 mere conclusions of law."); **Ex parte Dutchover**, 779 S.W.2d 76, 77 (Tex.Crim.App. - 1989)

("Furthermore, applicant fails to allege facts showing in  context of his particular trial the **Long**

error was not harmless beyond a reasonable doubt."); **Ex parte Freeman**, 778 S.W.3d 874

(Tex.App. - Houston 1, 1989) ("Because appellant did not state facts that would entitle him to

relief, the trial court correctly refused to hear evidence on the issue of ineffective

assistance of counsel.") **Ex parte Lopez** 745 S.W.2d 29 (Tex.Crim.App. - 1988)( dissenting

opinion, PJ. Onion, ""In my opinion the applicant has not alleged and proved facts which, if true,

would entitle him to relief. (citation omitted)  I would dismiss the application without prejudice to applicant's right to replead and support his allegations "with adequate reasoning, argument, and testimonial and recorded evidence," which illustrates, if it does, that he  was denied the effective assistance of counsel following remand.").

Though the Fifth Circuit has ruled against his claim, as the magisrate judge noted,   the issue is not as clear as the either Fifth Circuit or the magistrate would hold.

**Coleman** itself presents two openings.  First, **Coleman** is predicated on the absence of a Sixth Amendment guarantee to the assistance of counsel in post conviction proceedings. 501 U.S. at 754:

> Where a petitioner defaults a claim as a result of the denial of the right to effective
> assistance of counsel, the State, which is responsible for the denial as a constitutional
> matter, must bear the cost of any resulting default and the harm to state interests that
> federal habeas review entails.  A different allocation of costs is appropriate in those
> circumstances **where the State has no responsibility to ensure that the petitioner was**
> **represented by competent counsel.**  As between the State and the petitioner, it is the
> petitioner who must bear the burden of a failure to follow state procedural rules. In the
> absence of a constitutional violation, the petitioner bears the risk in federal habeas for all
> attorney errors made in the course of the representation. . . . (citation omitted).

Id.

There can be little doubt that competent counsel to represent Mr. Monterrubio was contemplated by state habeas counsel's appointment herein.  Article 11.071 of the Texas Code of Criminal Procedure  took effect on September 1, 1995 and ordered the Texas Court of Criminal Appeals "under rules and standards adopted by the court, [to] appoint competent counsel" to

indigent death row inmates for state post-conviction appeals. TEX. CODE CRIM. PROC. Art. 11.071 § 2(d). Such counsel, the statute provided, "shall investigate expeditiously...the factual and legal grounds for the filing of an application for a writ of habeas corpus." *Id.* § 3(a). The State of Texas is clearly responsible for providing effective counsel and, consequently, for Mr. Monterrubio's procedural default and must bear its costs.

Secondly, **Coleman** did not resolve the issue of whether a prisoner is entitled to the effective assistance of state habeas counsel if "state collateral review is the first place a prisoner can present a challenge to his conviction." Id at 755. See also **Daniels v United States**, 532 U.S. 374 (2001)( Justice Scalia concurring - "We have left open the question whether such ineffective assistance can establish a constitutional violation," citing **Coleman**). In Texas, claims of ineffective assistance of trial counsel are to be raised by post-conviction writ of habeas corpus. **Ex parte Torres**, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). In **Thompson v. State**, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999), a non-capital case, the Court of Criminal Appeals held that only "[r]arely" will an appellate court possess an adequate record to fairly evaluate the claim. In the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy both prongs of Strickland. See also **Jackson v. State**, 877 S.W.2d 768 (Tex.Cr.App. 1994)(concurring opinion JJ. Baird and Overstreet, "... appellate counsel would be well advised, and appellants would be better served, if claims of ineffective assistance of counsel were not raised on direct appeal but rather in applications seeking habeas corpus relief").

Further, the Art. 11.071 proceeding was Mr. Monterrubio's first practicable opportunity to raise ineffective assistance of counsel on appeal. Mr. Pena, the appointed appellate counsel, cannot be expected to meaningfully challenge his own misconduct. A meaningful challenge based on ineffective assistance of appellate counsel was not likely to occur. See **Alston v**

**Garrison**, 720 F.2d 812, 816 (4th Circ. 1983) ("where, as here, the defendant's trial lawyer also prosecuted the appeal, it is obvious that ineffective assistance of counsel is not likely to be raised at trial or to appear among the assignments of error."). See also **Kimmelman v Morrison**, 477 U.S. 365, 378 n.3 (1986) (as a general rule, "no . . . meaningful opportunity exists for the . . . fair litigation of a habeas petitioner's ineffective-assistance claims at trial and on direct review." )

While deciding that Coleman did receive effective assistance of counsel at the trial level stage of habeas corpus, [5] the Court noted that where the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, an unconstitutional line has been drawn between rich and poor. 501 U.S. at 756, quoting from **Douglas v California**, 372 U.S. 353, 357 (1963).

> Coleman has had his "one and only appeal," if that is what a state collateral proceeding may be considered; the Buchanan County Circuit Court, after a two day evidentiary hearing, addressed Coleman's claims of trial error, including his ineffective assistance of counsel claims. What Coleman requires here is a right to counsel on appeal from that determination. Our case law will not support it.

501 U.S. at 756. Mr. Monterrubio has not had his one and only appeal where ineffective assistance of appellate counsel could be effectively challenged because of state habeas counsel's indifference to his rights. See e.g. **Griffin v Delo**, 961 F.2d 793 (8th Cir. 1992) (case remanded for consideration of whether attorney who represented the pro se petitioner in state and federal post conviction remedies was ineffective for failing to raise certain claims including ineffective assistance of trial and appellate counsel and for failing to adequately address other issues). See also **Weekley v Jones**, 927 F.2d 382, 386-87 (8th Cir. 1991).

There can be little doubt of the importance of post conviction review of death cases. For

---

[5]. The issue before the Court in **Coleman** was whether Coleman's counsel had rendered effective assistance of counsel by failing to timely file a notice of appeal.

example, prosecutorial misconduct is often not detected at trial, since it frequently involves successful suppression of relevant information by state officials during trial.  In **Amadeo v. Zant**, 486 U.S. 214, 224 (1988), the petitioner's conviction was reversed on the basis of a damning prosecution memorandum discovered by volunteer habeas counsel during an  extra-record investigation of "20 to 30 years' worth of jury lists."  In **Kyles v. Whitley**, 514 U.S. 419, 422  (1995), it was not until state postconviction proceedings that counsel was "first able to present certain evidence, favorable to Kyles, that the State had failed to disclose before or during the trial."  In **Kirkpatrick v. Whitley**, 992 F.2d 491, 496 n.22 (5th Cir. 1993), **Brady** material was discovered by volunteer capital habeas counsel when a police official offered it in response to counsel's requests for relevant extra-record information. See also **Guerra v. Johnson**, 916 F. Supp. 620 (S.D. Tex. 1995), *aff'd,* 90 F.3d 1075 (5th Cir. 1996) (the fact that testimony underpinning the capital conviction was influenced by threats, improper coaching of witnesses, and suppression of prior inconsistent statements remained undiscovered until state postconviction proceedings).  To deny effective counsel at some important a stage of capital proceedings is to run a very real risk of the execution of a person unfairly tried and convicted.

Finally, contrary to the Magistrate Judge's report,  a number of state jurisdiction have recognized, either as a matter of due process, or as a matter of state statutory law, the right to effective habeas counsel.  **State v. Velez**, 746 A.2d 1073 (N.J. Super.Ct. 2000); **Ivoieno v Commissiner of Correction**, 699 A.2d 1003 (Conn. 1997); **People v Johnson**, 609 N.E. 2d 304 ((ll. 1994); **Waters v. State**, 574 N.E.2d 911 (Ind. 1991); **People v Butler**, 541 N.E. 2d. Ill.App. Ct. 1989); **Jackson v Weber**, ___ N.W.2d ___, 2001 WL 1426700 (S.D. Nov. 2001); **Commonwealth v Albrecht**, 720 A.2d 693 (PA. 1998); **Olive v Maas**, ___ So. 2d ___ (#SC00-317 Fla, Feb. 14, 2002); **Spaulding v Dugger**, 526 So.2d 71 (Fla 1988) ( as a matter of Florida

statutory law).

C. Due Process Right to Adequate State Habeas Counsel.

The Sixth Amendment is not the only basis from which this Court can infer a duty to

provide effective state counsel. As noted above, due process compels that result. Although the

United States Supreme Court has been clear that there is no protected Sixth Amendment right to

counsel under the United States Constitution in state post-conviction proceedings, **Murray v.**

**Giarratano** 492 U.S. 1 (1989), "when a State opts to act in a field where its action has

significant discretionary elements, it must nonetheless act in accord with the dictates of the

Constitution -- and, in particular, in accord with the Due Process Clause." **Evitts v. Lucey**, 469

U.S. 387, 401 (1985). [6] The State of Texas has opted to provide post-conviction review of death

_____

[6]. "Nonetheless, if a State has created appellate courts as "an integral part of the system
for finally adjudicating the guilt or innocence of a defendant," Griffin v. Illinois, 351 U.S., at 18,
the procedures used in deciding appeals must comport with the demands of the Due Process and
Equal Protection Clauses of the Constitution.....Therefore, Douglas v. California, supra,
recognized that the principles of Griffin required a State that afforded a right of appeal to make
that appeal more than a "meaningless ritual" by supplying an indigent appellant in a criminal case
with an attorney.....A system of appeal as of right is established precisely to assure that only those
who are validly convicted have their freedom drastically curtailed. A State may not extinguish
this right because another right of the appellant — the right to effective assistance of counsel —
has been violated....although a State may choose whether it will institute any given welfare
program, it must operate whatever programs it does establish subject to the protections of the
Due Process Clause. See Goldberg v. Kelly, 397 U.S. 254, 262 (1970). Similarly, a State has
great discretion in setting policies governing parole decisions, but it must nonetheless make those
decisions in accord with the Due Process Clause. (citations ommitted)..... In short, when a **State
opts to act in a field where its action has significant discretionary elements, it must
nonetheless act in accord with the dictates of the Constitution — and, in particular, in
accord with the Due Process Clause**.....In establishing a system of appeal as of right, the State
had implicitly determined that it was unwilling to curtail drastically a defendant's liberty unless a
second judicial decisionmaker, the appellate court, was convinced that the conviction was in
accord with law.....In cases like Griffin and Douglas, due process concerns were involved
because the States involved had set up a system of appeals as of right but had refused to offer
each defendant a fair opportunity to obtain an adjudication on the merits of his appeal..... Under
any reasonable interpretation of the line drawn in Ross (cite ommitted), between discretionary
appeals and appeals as of right, a criminal defendant's appeal of a conviction to the Kentucky

sentences under Article 11.071 of its Code of Criminal Procedure, and has guaranteed the

appointment of competent counsel under Article 11.071 §2. Since it has chosen to provide these

statutory rights, the State of Texas must provide them in accordance with due process. See

**Evitts**, 469 U.S. at 387.

The federal courts have long recognized a right to due process in Texas post-conviction

proceedings. In **Welch v. Beto,** the United States Court of Appeals for the Fifth Circuit plainly

stated this right: *"**Having invoked Texas statutes granting post-conviction hearings, Welch**

**had the right to be tried according to the substantive and procedural due process requirements**

**of the Fourteenth Amendment.**"* **Welch v. Beto**, 355 F.2d 1016, 1020 (5th Cir.), *cert. denied,*

385 U.S. 839 (1966) (emphasis added). In **Welch**, a death-sentenced inmate requested a post-

conviction hearing regarding his sanity to proceed on appeal, pursuant to then TEX. CODE CRIM.

PROC. art. 932 (b)§ 3. *See id.* at 1018.[7] He presented, in affidavit form, the evidence of his

insanity -- all of which had been presented to the jury at trial. *Id.* at 1018.[8] The state presented

no evidence to refute Welch's affidavit, but merely contended that the evidence was the same as

that which the jury rejected at trial. *Id.* The trial court refused to hold a hearing before a jury.

---

Court of Appeals is an appeal as of right....**It follows that for purposes of analysis under the**
**Due Process Clause, respondent's appeal was an** **appeal as of right**, **thus** **triggering the**
**right to counsel recognized in Douglas v. California.**" (emphasis supplied)


[7]     The Texas statute allowed for the empanelment of a jury and a hearing on sanity
during a criminal defendant's appeal of a conviction if the judge of the convicting court found a
reasonable doubt as to the sanity of the defendant. *See id.* at 1018 n. 2.

[8]     A jury considered Mr. Welch's sanity at his original trial. *Id.* After a psychiatrist
testified that Mr. Welch was insane, the state then presented the testimony of the local medical
doctor and two lay witnesses who expressed their view that Mr. Welch was sane. The jury found
him sane and he was convicted and sentenced to death. *Id.*

*Id.*

Although the Fifth Circuit recognized that no new evidence of the inmate's insanity had been produced, the Court held that the judge's failure to hold a hearing in the absence of any evidence presented by the state was a violation of the statute and therefore a violation of due process. The **Welch** Court did not consider whether a new hearing would have been likely to produce a different result, but rather based its grant of relief solely on the denial of process. *Id.*

The United States Supreme Court has also stated that the right to due process extends to state post-conviction proceedings such as Mr. Monterrubio's Article 11.071 proceeding. In **Case v. Nebraska**, 381 U.S. 336, 337 (1965), the Court granted review in a Nebraska case where an inmate challenged his guilty plea and the State of Nebraska's post-conviction remedy did not apply to his case. The Court granted certiorari "to decide whether the Fourteenth Amendment requires that the States afford prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees." *Id.* Although the Court never reached the issue because of an intervening change in the Nebraska statute, the Court's action was a clear recognition of a right to some form of due process.

More recently, in **Ohio Adult Parole Authority v. Woodard**, 523 U.S. 272 (1998), the Court discussed a post-conviction right to due process in the context of clemency proceedings. A plurality of the Court held that there is, at least, a minimal right to due process of law in executive clemency proceedings.[9] Justice O'Connor's concurrence in the case explains that, "although it is true that pardon and commutation decisions have not traditionally been the

---

[9]    Five justices of the United States Supreme Court held that a right to due process in clemency proceedings exists. *See Woodard*, 523 U.S. at 288-89  (O'Connor, J., concurring, joined by Souter, Ginsberg, and Breyer, JJ.); *id.* at 290 (Stevens, J., dissenting).

business of the Courts . . . some minimal procedural safeguards apply to clemency proceedings."

*Id.* at 289 (internal citations omitted). The obvious implication of this statement is that matters

such as post-conviction habeas proceedings, which are traditionally within the purview of the

courts, require a significantly greater attention to due process. Even Justice Rehnquist's opinion

announcing the judgment, but joined by only three members of the Court, distinguished clemency

from other features of the criminal justice process:

> Clemency proceedings are not part of the trial or even the adjudicatory process.
> They do not determine guilt or innocence, and are not intended primarily to
> enhance the reliability of the trial process. They are conducted by the Executive
> Branch, *independent of direct appeal and collateral relief proceedings.*

*Id.* at 284 (emphasis added). Justice Stevens addressed the question directly in his dissenting

opinion, stating:

> If there could be any question whether state postconviction proceedings are
> subject to due process protections, our unanimous opinion in Yates v. Aiken, [484
> U.S. 211, 217-218, (1988)], makes clear that they are.

*Id.* at 293 n.3. This review of cases demonstrates the courts' longstanding recognition of a robust

right to due process in state post-conviction proceedings.

Mr. Monterrubio's due process rights were ignored in the state habeas proceedings. He

was so abysmally represented that all of his claims were forfeited.

### C. An Inadequate State ground

For a procedural default to operate as a bar to habeas corpus relief in federal court, it must

be both an independent state ground, that is rest on a state law ground that is independent of

federal law and an adequate bar, that is, adequate to support the judgment. **Coleman v**

**Thompson** supra at 729.

In **Lee v Kemna**, 534 U.S. 362 (2002), the Court stated that ordinarily, the violation of a

firmly established and regularly followed state rule forecloses federal review. "There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." It is admittedly a small category of cases.

Violations of due process can place a habeas case in that small category. In **Reece v Georgia**, 350 U.S. 85 (1955), Georgia law required a defendant, who wished to challenge the composition of the grand jury that indicted him, to raise that challenge before indictment; in Reece's case, he was not appointed counsel until after indictment. He filed his grand jury challenge before arraignment. Finding a requirement of effective assistance of counsel in these circumstances in the due process clause, 350 U.S. at 90, the Court ruled that the state of Georgia should have considered Reece's claim on the merits, because he had absolutely no opportunity to present these issues before counsel was appointed. In **Brinkerfoff-Faris v Hill**, 281 U.S. 673 (1930), the Court held that the due process clause mandated that the State, either through its judiciary or its legislature, could not deprive a person of all existing remedies for the enforcement of a right. See also **Alburquerque v. Bara**, 628 F.2d 767 (2nd Cir. 1980) (concurring opinion, J. Breiant).

Mr. Monterrubio has set forth his due process argument above. Briefly, it is that when a state statute promises a certain procedure, here, the appointment of competent state habeas counsel, it is a violation of due process to renege on that guarantee. Such a violation places Mr. Monterrubio in that small category of cases where the state procedural bar is not an adequate basis for denying federal review.

## D. . Claim on the Merits

Ms. Cockrell argued before the Magistrate that Mr. Monterrubio's Sixth Amendment claim was without merit; the statement of Sixto Monterrubio was admissible against Petitioner. This argument ignores the effect of **Lilly v Virginia**, 527 U.S. 116 (1999). There the Supreme Court held that "our cases consistently have viewed an accomplice's statements that shift **or spread** the blame to a criminal defendant as falling outside the realm of those 'hearsay exceptions' [that are] so trustworthy that adversarial testing can be expected to add little to [ the statements'] reliability." **Lilly v Virginia**, supra citing **White v. Illinois**, 503 U.S. 346, 357 (1992). Further, the Court ruled that it was "highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the old *ex parte* affidavit practice – that is, when the government is involved in the statements production, and when the statements describe past events and have not been subjected to adversarial testing."

The Court "squarely rejected" the concept that evidence corroborating the out of court statement's truth might supply the necessary "guarantees of trustworthiness." **Lilly v. Virginia** citing **Idaho v. Wright**, 497 U.S. 805 (1990). The standard is that set forth in **Idaho v. Wright**:: reliability is a factor that should be determined from the totality of the circumstances but **the only relevant circumstances are those surrounding the making of the statement that make the declarant worthy of belief**. In other words, the declarant's truthfulness must be so clear from the surrounding circumstances of the statement's making that the test of cross-examination would be of marginal utility. Id.  In short, the Court rejected the very analysis Ms. Cockrell attempts to make here: that the statement is reliable because it is corroborated by other evidence. There is no evidence surrounding the making of the statement that would suggest it was reliable.

Even if **Lilly** is of no help to Mr. Monterrubio because its date of decision was after Mr.

Monterrubio's appeal was submitted, prior case law dictated the same result.  As evidence of

that, this Court need only refer to the Fifth Circuit's opinion in **U.S. v. Flores**, 985 F.2d 770 (5th

Cir. 1993) decided before Mr. Monterrubio's trial. [10] The Court's reasoning is instructive on this

point and will be quoted from extensively:

> The **[Idaho v. ]Wright** [supra]  court determined that Idaho's residual exception to the
> hearsay rule was not a firmly rooted exception so that evidence may only be admitted
> under that exception if it had "particularized guarantees of trustworthiness." Similarly, a
> confession by an accomplice inculpating a defendant that is being offered as a declaration
> against penal interest is not a firmly rooted exception. Although some statements that fall
> within the declaration against penal interest  concept may be inherently reliable, the
> concept itself "defines too large a class for meaningful Confrontation Clause analysis."
> **Lee v. Illinois**, 476 U.S. 530, 544 n. 5, 106 S.Ct. 2056, 2064 n. 5, 90 L.Ed.2d 514 (1986).
> Therefore, each class of statements that falls within the exception must be analyzed to
> determine whether it is inherently reliable. Confessions of accomplices or codefendants
> are "presumptively unreliable as to the passages detailing the defendant's conduct or
> culpability because those passages may well be the product of the codefendant's desire to
> shift or spread blame, curry favor, avenge himself, or divert attention to another." Id. 476
> U.S. at 545, 106 S.Ct. at 2064.
>
> Navarro's  grand jury testimony  is a confession of a codefendant, and it may only
> be admitted against Flores if the relevant circumstances "that surround the making of the
> statement ... render the declarant particularly worthy of belief." **Wright**, 497 U.S. at 819,
> 110 S.Ct. at 3148. However, the district court considered corroborating evidence in
> addition to the circumstances surrounding the making of the statement. This situation
> resembles **United States v. Gomez-Lemos**, 939 F.2d 326 (6th Cir. 1991), where two co-
> conspirators' grand jury testimony was used against the defendant at trial. The testimony
> was admitted as a declaration against penal interest, the co-conspirators having made
> themselves unavailable by evoking their Fifth Amendment privilege not to testify. The
> Court held, under **Wright**, that the district court committed error in admitting the grand
> jury testimony because it "found significant in its reliability analysis the fact that the
> hearsay testimony of co-conspirators Barraza and Osorio was corroborated." *Id.* at 332.
> Since the district court, contrary to *Wright,* considered corroborating evidence in support
> of its decision to admit Navarro's testimony, its decision may not stand. [16]

After overruling its prior precedent, allowing such testimony, the Court reasoned:

---

[10].  In **Flores**, the Government used the grand jury testimony of a codefendant who later
invoked his Fifth Amendment right not to testify and was thus, unavailable under Fed.R.Evid.
804.

Moreover, we believe that the type of evidence here considered should be deemed inadmissible in light of the historical underpinnings and core values of the Confrontation Clause, and what we view as the infringement of those values in this general context by the evolutionary expansion of the concepts of unavailability and declaration against penal interest.

The Court then discussed extensively the historical development of both the concept of unavailability and the declaration against penal interest.

The **Donnelly** court considered whether the confession of a third party exculpating the defendant should be admitted as evidence. *Id.* 228 U.S. at 271, 33 S.Ct. at 459. The Court determined that it should not, because although a recognized exception to the hearsay rule existed concerning declarations against interest, "it is almost universally held that this must be an interest of a pecuniary character... In this country there is a great and practically unanimous weight of authority in the state courts against admitting evidence of confessions of third parties...." *Id.* 228 U.S. at 273-274, 33 S.Ct. at 459-60. **Donnelly** also relied on **Sussex** and on Justice Marshall's opinion in **Queen v. Hepburn**, 11 U.S. (7 Cranch) 290, 3 L.Ed. 348 (1813), which observed, "The danger of admitting hearsay evidence is sufficient to admonish courts of justice against lightly yielding to the introduction of fresh exceptions to an old and well-established rule; the value of which is felt and acknowledged by all." *Id.* 11 U.S. (7 Cranch) at 296, 3 L.Ed. at 350.

. . . .

Although rule 804 does not specifically address the situation where the third-party declarant's confession contains statements inculpating the defendant, the Supreme Court has always viewed such statements as inherently suspect. **Douglas v. Alabama**, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (admission of nontestifying previously tried codefendant's confession violated the defendant's rights under the Confrontation Clause); **Bruton v. United States**, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (admission of nontestifying jointly tried codefendant's confession with a limiting instruction still violated the defendant's rights under the Confrontation Clause). The rules advisory committee notes to rule 804(b)(3) also recognize this inherent unreliability in positing that "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." **West's Federal *Criminal Code and Rules*** 287-88 (1991 rev. ed.).

The relatively recent recognition of declarations against penal interest as an exception to the hearsay rule by the Federal Rules of Evidence would seem to counsel against a headlong rush to broadly embrace the exception as providing a sufficient substitute for cross-examination and personal confrontation in cases of the present kind.

We recognize that statements which adversely implicate the penal interest of the declarant alone for many years have been widely recognized as normally reliable and, where the declarant is unavailable, have usually been admitted in evidence in federal and most state courts. *See* E. Clearly, ***McCormick on Evidence*** § 278 (3d ed. 1984). Arguably, such statements may be deemed a "firmly rooted" exception to the hearsay rule under the *Lee* formulation. On the other hand, even generally objectionable statements in which the declarant adversely implicates not only his own penal interest but also that of another may be made under circumstances that both suggest reliability and do not seriously invade the intended protections of the Confrontation Clause, such as statements made to a personal acquaintance in a noninvestigatory context where the setting suggests no motive to speak falsely. This distinction seems to be recognized by the rules advisory committee's reference to statements made "to an acquaintance." ***West's Federal Criminal Code and Rules*** at 288 (advisory committee notes to rule 804(b)(3)). Cf. **United States v. Triplett**, 922 F.2d 1174, 1178, 1182 (5th Cir. 1991) (statement to neighbor). Such statements might well fall into the **Lee** category of those shown to have "particularized guarantees of trustworthiness."

It appears to us, however, that there is another category of statements against penal interest that should generally be regarded as inadmissible under the Confrontation Clause, particularly where the declarant's unavailability is due simply to invocation of the Fifth Amendment in response to actual or potential prosecution, namely statements accusatory of another taken by law enforcement personnel with a view to prosecution. **Such statements have two characteristics that together make them inherently unreliable: (1) the declarant makes accusatory statements that inculpate another; and (2) these statements are made to nonundercover law-enforcement personnel after the commission of the offense. In that generic situation there always exists the strong possibility that the declarant has the "desire to shift or spread blame, curry favor, avenge himself, or divert attention to another."** Lee, 476 U.S. at 545, 106 S.Ct. at 2064. It is precisely in these circumstances that cross-examination, the "greatest legal engine ever invented for the discovery of truth," *see* 5 Wigmore, *supra*, § 1367 p. 32, is preeminently suited to determining the trustworthiness of a declarant's statements as envisioned by the framers of the Confrontation Clause.

The Confrontation Clause reflects "the ancient faith of the common law, incorporated by the founders in the Bill of Rights, that live confrontation and cross-examination of witnesses in the courtroom is the key to finding the truth in a criminal trial." **Gomez-Lemos**, 939 F.2d at 333. As noted by the concurrence in **Gomez-Lemo**s, "The framers of our Constitution were well aware of England's unhappy experience with Star Chamber procedures, and the Sixth Amendment was designed, in part, to forbid the use of the most objectionable of these procedures in the criminal courts of the United States." *Id.* at 334 (Nelson, J., concurring). Such objectionable procedures included sworn *ex parte* depositions used against defendants in criminal cases. Coke, Fourth Institute, Chapters 5 and 64. The Confrontation Clause was developed to "prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness." **Mattox,**

156 U.S. at 242, 15 S.Ct. at 339; see also **California v. Green**, 399 U.S. 149 at 155-156, 90 S.Ct. 1930 at 1934, 26 L.Ed.2d 489 (1970); **White v. Illinois**, ___ U.S. ___, ___, 112 S.Ct. 736, 746, 116 L.Ed.2d 848 (1992) (Thomas, J., dissenting).

        The hearsay rules operate in civil as well as criminal proceedings, and may be invoked by the government as well as by the citizen. But the Confrontation Clause applies only in criminal prosecutions and protects only the accused. Its "lineage ... traces back to the beginnings of Western legal culture." **Coy v. Iowa**, 487 U.S. 1012 at 1015, 108 S.Ct. 2798 at 2800, 101 L.Ed.2d 857 (1988). Moreover, "'the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact,'" **Maryland v. Craig**, 497 U.S. 836, 844, 110 S.Ct. 3157, 3162, 111 L.Ed.2d 666 (1990) (quoting **Coy**, 487 U.S. at 1015, 108 S.Ct. at 2800), "witnesses who confront him at trial, upon whom he can look while being tried." **Coy** 487 U.S. at 1017, 108 S.Ct. at 2801. The purpose of confrontation is not *solely* a function of conventionally explainable enhanced reliability, for in this respect the clause "serves ends related both to appearances and to reality," **Coy** 487 U.S. at 1017, 108 S.Ct. at 2801, has a "strong symbolic purpose," and responds to "'something deep in human nature that regards face-to-face confrontation between accused and accuser as "essential to a fair trial in a criminal prosecution."'" **Craig** 497 U.S. at 847, 110 S.Ct. at 3164 (quoting **Coy** 487 U.S. at 1015, 108 S.Ct. at 2800, quoting **Pointer v. Texas**, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)).

        The use of *ex parte* depositions is still barred in criminal proceedings. Depositions may only be taken for a criminal trial if notice is given to all parties, the defendant is given an opportunity to be present personally and through counsel at the examination, and the scope and manner of examination and cross-examination are the same as would be allowed at the trial itself. Fed.R.Crim.P. 15. However, under **Vernor**, the substantial equivalent of an *ex parte* deposition may be taken, and used at trial against a defendant, where the prosecutor procures a declarant's grand jury testimony with an eye towards the later joint prosecution of the defendant and/or the declarant. In the case *sub judice,* Navarro's grand jury testimony, derived *ex parte* and without the benefit of counsel for either himself or Flores, comes perilously close to resembling England's Star Chamber proceedings. The government's choice of trying Navarro jointly with Flores in essence guaranteed that Navarro would be unavailable because he would invoke his Fifth Amendment privilege. The government, in effect, created its own unavailable declarant. The district court allowed this testimony into evidence against both defendants because it adversely implicated Navarro's penal interest and the district court was satisfied with its trustworthiness. **However, in the area of codefendants' confessions to law enforcement authorities that implicate another, this should rarely — if ever — be the case due, among other things, to their inherent unreliability.** Lee, 476 U.S. at 540, 106 S.Ct. at 2062. (emphasis added).

        The Supreme Court has never allowed the admission against a defendant of a codefendant's hearsay inculpatory statements to law enforcement authorities, although it has suggested that theoretically such hearsay could be admitted in appropriate

circumstances. **Cruz v. New York**, 481 U.S. 186, 192, 107 S.Ct. 1714, 1719, 95 L.Ed.2d 162 (1987); Lee, 476 U.S. at 546, 106 S.Ct. at 2065. But that suggestion should not drive us to allow a codefendant's confession to law enforcement authorities to be admitted against the defendant merely because the district court is able to fairly recite a litany of factors and conclude that the particular confession has "sufficient indicia of reliability." In *Vernor,* the factors surrounding the making of the statement that were relied on to demonstrate its trustworthiness were: (1) the declarant took, without attempting to minimize, full responsibility for his role in the offense; (2) nothing indicated that the declarant made the statements to avenge himself or to curry favor with the authorities; (3) the authorities who procured the statements testified and were cross-examined at trial concerning the circumstances and contents of the statements; (4) no promises or plea bargains were made with the declarant; (5) the statements were made voluntarily; (6) the declarant was fully informed of his *Miranda* rights; and (7) the offense was still fresh in the declarant's mind. 902 F.2d at 1188.

**While the presence of these factors (as opposed to their opposites) doubtless renders a given confession more reliable than it would otherwise be, we are not persuaded that it substantially eliminates any reasonable possibility that the third party inculpatory portions of a confession to law enforcement personnel are unreliable.** As to the first factor, a declarant must incriminate himself in order to fit within the exception in the first place. Whether such incriminating statements describe the declarants' full role in the offense will rarely be determined from the confession alone. Taking on the full blame for a minor role in an offense, such as claiming to be a mere courier in a drug conspiracy, does little to demonstrate trustworthiness because the declarant still has the motive to shift the blame to others so as to receive a lesser penalty. In certain instances this concern might be resolved by other evidence, but **Wright** does not allow such evidence to be considered. The second factor views the *absence* of evidence showing improper motives as indicating trustworthiness. However, statements by suspects to law enforcement officials inculpatory of third parties are excluded because of the *presumption* that such motives exist, and the absence of evidence does not remove this presumption. **Lee,** 476 U.S. at 544, 106 S.Ct. at 2064. The third and fourth factors, though helpful in tending to indicate that the statements are not made in response to prior express inducements such as a plea bargain or other promise, do little to show that the declarant does not desire to curry favor with the authorities in the perhaps mistaken hope that he will receive some favorable consideration. Nor do they tend to negate a motive to avenge. The fifth and sixth factors, that the declarant made the statements voluntarily and with *Miranda* warnings, will generally be present when a confession is taken, and were present in **Lee.** The **Lee** court gave them no weight because they do not bear on whether the declarant's confession was free of the motive to mitigate the declarant's role in the offense. **Lee,** 476 U.S. at 544, 106 S.Ct. at 2064. The last factor, making the confession shortly after the offense, does little to illuminate the declarant's motive. (emphasis added).

If one suspected of a particular offense confesses to the investigating authorities and implicates others, under the above-referenced **Vernor** factors that confession, including its accusations against the others, could generally be admitted as substantive

evidence against all in a joint trial. In that context, the combined expansion of two generally benign evidentiary concepts — unavailability and declarations against interest — results in sanctioning evidence that has historically been viewed as generically suspect and violative of values at the very core of the Confrontation Clause. Where the government has the means to procure the declarant's trial testimony, the fact that there will often be "significant costs" (see **Lee** 476 U.S. at 550, 106 S.Ct. at 2067, Blackmun J., dissenting) in its doing so should not override one of our oldest and strongest legal traditions and the very essence of the Confrontation Clause, namely the protection against conviction on the basis of third party accusations made in *ex parte* confessions to law enforcement or prosecutorial authorities, where there is no opportunity for the defendant to cross-examine and personally confront — or for the trier of fact to observe — the declarant.

Cross page numbers unavailable.

This extended quotation was necessary to demonstrate that at the time this appeal was taken, Supreme Court authority mandated the exclusion of Sixto Monterrubio's confession. There was simply no excuse for Mr. Pena not to raise this issue.

Further, there is little doubt that Mr. Monterrubio was prejudiced by this failure of appellate counsel. Given that Sixto Monterrubio's confession provided the only evidence on a crucial element of the offense, that of corroborating the corpus delicti of the capital murder, the Court of Criminal Appeals would have had no choice but to reverse Mr. Monterrubio's conviction and, upon retrial, Mr. Monterrubio would not have faced a death sentence.

### III.

The Magistrate Judge also procedurally defaulted Mr. Monterrubio's Fifth Amendment challenge to the admission of his confession. See Magistrate's report pp. 15-18. According to the Magistrate Judge, Mr. Monterrubio's Fifth Amendment challenge is two fold: one that he presented to the Court of Criminal Appeals and one that he allegedly expanded in his second round of habeas corpus. Mr. Monterrubio disputes that holding.

As to the first argument allegedly presented to the Court of Criminal Appeals, the

Magistrate noted that the Court of Criminal Appeals had refused to address that issue because the point of error was inadequately briefed.   At the time Mr. Monterrubio's decision was rendered, briefing rules were governed by Tex.R.App.Proc. 74. [11]      Tex.R.App.Proc. 74(o) permitted briefs to be supplemented or amended, "and if the court shall strike or **refuse to consider any part of a brief,** the court shall on reasonable terms allow the same to be amended or supplemented." Tex.R.App.Proc. 74(p) mandated a liberal construction of the briefing rules; if the brief substantially complied with the rules, the issue would be considered. If it did not or if the rule violation was flagrant, the court had discretion: "the court may require the case to be rebriefed.

The Court of Criminal Appeals, though it had precedent for refusing to consider points of error inadequately briefed, see **Narvaiz v. State,** 840 S.W.2d 415, 429 ((Tex.Crim.App.- 1992); **Garcia v. State,** 887 S.W.2d 862, 876 (Tex.Crim.App.- 1994) cited in the opinion of the Court in the instant case, refused to apply this rule consistently. In some cases, as noted, the Court refused to consider the point of error.  In other cases, the point of error was considered in the interests of justice. See **Sterling v. State,** 800 S.W.2d 513, 521 (Tex.Crim.App.- 1990).  In other cases, the party was ordered to redraft his appellate brief. See **Pumphrey v. State,** 689 S.W.2d 466, 467 (Tex.Crim.App.- 1985).

The Fifth Circuit harshly criticized the strict application of this rule in **Passmore v. State,** 607 F.2d 662 (5th Cir. 1979):

---

[11] Tex.R.App.Proc. 38.9 now governs the interpretation of the briefing rules. 38.9(a) governs formal defects and accords the appellate court the discretion to either require a brief to be amended, supplemented or redrawn and, only if the defect is not cured by that remedial action, may the court strike the brief. With substantive defects, that is, where the "law and authorities have not been properly cited in the briefs," the court may postpone submission, require additional briefing, or make "an other order necessary for a satisfactory submission of the case."

It is abundantly clear tha the Texas Court of Criminal Appeals had actual knowledge that petitioner was receiving incompetent representation and took no remedial action. The per curiam opinion noted that "[o]bviously, this [one sentence brief] presents nothing for reivew. . . .

In the instant case, the Texas Court of Criminal Appeals could have ordered petitioner's counsel to rebrief the case before disposition of the appeal, . . . .

607 F.2d at 664.

A state procedural rule that is not mandatory but is only a matter of discretion cannot serve as a procedural default. See e.g. **Sullivan v. Little Hunting Park**, 369 U.S. 229, 223-34 (1969) (direct review case); **Williams v. Georgia**, 349 U.S. 375, 389 (1955) (direct review case); **Wells v Maass**, 28 F.3d 1005 (9th Cir. 1994). See also **Ortega-Rodriguez v United States**, 507 U.S. 234, 250, and fn. 23 (1993).

Further, to constitute an adequate state ground, see above, the state rule must be strictly and regularly followed in the state courts. **Hathorn v. Lovorn**, 457 U.S. 255, 262-63 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar cases.") See also **Coleman v. Thompson**, 501 U.S. 722, 758 (1991) (White, J. Concurring) (if it "were true" that the state supreme court "on occasion waives the untimeliness rule[,] the rule would not be an adequate and independent state ground barring direct or habeas review"); **Dugger v. Adams**, 489 U.S. 401, 410-11, fn. 6 (1989); **Johnson v. Mississippi**, 486 U.S. 578, 587 (1988); **Sayre v. Anderson**, 283 F.2d 631, 634 (5th Cir. 2001) (state rule deeming claims to be defaulted in raised for the first time at post conviction stage is not adequate to bar federal review because the State of Mississippi did not usually apply rule to similar claims); **Martin v. Maxey**, 98 F.3d 844, 848 (5th Cir. 1996); **Reed v. Scott**, 70 F.3d 844,

846-47 (5th Cir. 1995); **King v.Puckett**, 1 F.3d 280, 283-84 (5th Cir. 1993); **Smith v. Black**, 970 F.2d 1383, 1386-88 (5th Cir. 1992).

Thus, the Magistrate Judge's application of a procedural bar to this issue was inappropriate. This Court should consider the issue on the merits.

Further, there are not two claims as the Magistrate Judge concluded. Though the claim presented in federal court differs in language from that presented in state court, it is the same claim. a petitioner is not required to have exhausted each individual fact during state proceedings. When a claim has been presented to the state courts, a petitioner in federal court may develop new facts supporting that claim, unless the additional factual presentation makes the "claim[] . . . so clearly distinct from the claim[] he has already presented to the state courts that it may fairly be said that the state courts have had *no opportunity* to pass on the claim . . . ." **Humphrey v. Cady**, 405 U.S. 504, 516 n.18 (1972) (emphasis added); see **Brown v. Estelle**, 701 F.2d 494, 495 (5th Cir. 1983) (exhaustion required when new evidence "place[s] the case in a significantly *different* and stronger evidentiary posture than it was when the state courts considered it") (emphasis added). Every new fact does not render a claim unexhausted. New facts only render a claim unexhausted when the information alters the claim to such an extent that it would not be fair to say that the state courts had the opportunity to consider it. **See Humphrey**, 405 U.S. at 516. Mr. Monterrubio did not allege new facts but merely plead the facts correctly. Further, the Texas Court of Criminal Appeals addressed this issue on the merits on direct appeal. See fn. 6. The issue has been both presented to the state courts and addressed on the merits; there is no procedural default. This Court should also address the issue on the

merits. [12]

WHEREFORE, PREMISES CONSIDERED, Mr. Monterrubio respectfully requests that this Court sustain his objections to the Magistrate's Report and, upon final consideration, grant him his requested relief.

Respectfully submitted,

Michael B. Charlton
1744 Norfolk
Houston, Texas 77098
(713) 572 2333
(713) 572 2483 (fax)
State Bar of Texas 04144800
State Bar # 04144800
Federal Bar # 8663
COUNSEL FOR JOSE IGNACIO MONTERRUBIO

Elisa Vasquez
613 19th Street
Galveston, Texas 77550
(409) 763 2131
(409) 763 4104
State Bar of Texas 20502100
COUNSEL FOR JOSE IGNACIO MONTERRUBIO

---

[12]. The Court of Criminal Appeals decided the issue on an incorrect perception of the facts. It ruled that there was no state action because Mr. Monterrubio conveyed his desire for counsel to his uncle. "Appellant's request to his uncle and his uncle's response are a private matter involving no State action." This is factually incorrect. Mr. Monterrubio conveyed his request to Officer Lucio who was interrogating him, who then in turn communicated request to the petitioner's uncle. There is more than enough State action to justify invocation of the Fifth Amendment.

## CERTIFICATE OF SERVICE

This is to certify that a copy of this Objections to the Magistrate's Report was served on opposing counsel, Tina Dettmer, of the Texas State Attorney General's Office, P.O. Box 12548, Austin, Texas 78711 by mailing a copy of same on May 19, 2003.

Michael B. Charlton